Edwards v. Martin.

LYDIA A. M. EDWARDS, ADMINISTRATRIX,

v.

HANNAH E. MARTIN.

*Husband and Wife—Ante-nuptial Contract—Construction of—Widow's Award.*

1.   Marriage is a sufficient consideration for an ante-nuptial contract fairly and understandingly entered into.

2.   A wife may waive any and all right to any portion of her husband's estate by such agreement and be bound thereby, where fraud, collusion, overreaching or advantage taken can not be shown.

3.   In the case presented, this court holds that under the agreement in question the widow was not entitled to widow's award in her husband's estate, and that the judgment in her favor can not stand.

[Opinion filed May 21, 1891.]

APPEAL from the Circuit Court of Kane County; the Hon. ISAAC G. WILSON, Judge, presiding.

Messrs. SHERWOOD & JONES and J. W. RANSTEAD, for appellant.

It is said in the appellee's answer, that she has received no consideration for the waiver of her widow's award, and for that reason the contract is not obligatory on her. A similar defense was set up to defeat an ante-nuptial contract in the case of McGee et al. v. McGee et al., 91 Ill. 548, where the question was whether the contract barred the widow's dower and homestead. There were minor children in that case and it was held that the widow was entitled to a homestead, but not to dower; and the court said: " Another point made is, the husband parted with nothing that had belonged to him which the intended wife could accept in lieu of dower, and for that reason, it is said, she could not be barred from claiming dower in the lands of her husband, as given by statute, either in law or in equity. The objection rests upon a misapprehension of the legal effect of the contract. It will be remembered the agreement was made in 1857, in contemplation of a marriage soon to take place between the contracting parties, and ancillary to that event. In the agreement it was recited that both parties were then the owners of real and personal property, and that the intended wife, as heir of Horace Lender, would be entitled to other property, real, personal and mixed. As the law then was, the husband, on the consummation of the marriage, would succeed to the absolute ownership of the personal property of the wife, and would also be entitled to curtesy in his wife's real estate, as well as the usufruct thereof. Thus it is seen the husband relinquished all the right which, by the marriage, he might have acquired over the estates of his wife, and, in consideration of his agreements, she also released all rights in the estate of her intended husband, which the law would cast upon her in consequence of the marriage. It is conceded the husband, during his lifetime, abided by his part of the agreement, and that each of them " owned and managed their separate prop-

erty.   The contract is in our judgment, a reasonable one.   It is one that persons advanced in life could with great propriety make," etc.

In the present case the appellee had considerable property of her own.   If there had been no contract, and the appellee had died before Mr. Martin, he would have been entitled to the homestead and dower in the real estate and to one-third of her personal property; this right he relinquished by the contract.   This was, in itself, a good and sufficient consideration.   In Barth v. Lines et al., 118 Ill. 374, where the widow claimed dower, notwithstanding an ante-nuptial agreement similar to the one here, it was urged that the intestate had surrendered nothing to the widow as a consideration of the release of her dower; in that case the widow owned real estate worth about $2,000, and had some personal property.   The court said :   " By the agreement he released all claim to the interests which the law would thus have given him in her estate, and empowered her to dispose of it by will from any dower rights therein, on his part.   She made the same relinquishment to him of whatever interest the law would give her in any of his property.   He was a farmer, and she kept a store; each was to control and manage his or her own property, free from any interference by the other."   It was held that the agreement barred the widow's dower.

In these cases, as will be seen, it was held that an agreement on the part of the intended husband to release all claims in his wife's property was a sufficient consideration for her agreement to release her dower in his real estate.   Why should not such an agreement be a good consideration for the release of the widow's award also ?   If the contract binds the widow in one case, why not in the other, when there are no children interested?   In McMahill v. Est. of McMahill, 113 Ill. 461, and in Spencer v. Boardman et al., 118 Ill. 553–558, the rule of law is settled that where there are no children who have an interest in the award, and where the widow by an ante-nuptial contract fairly made has waived her right to the award, she will be bound by the contract.

In the present case the appellee's agreement was, in case

she should survive her husband, to release " all right of dower and all right of support or claim or interest of every kind or description " in his estate, and it " shall be right and lawful for him or his heirs, executors, administrators or assigns, to take possession of all that remains of the above said property, and dispose of the same, independent of the party of the second part forever." This is broad enough to include the widow's award.

Messrs. THOMAS J. RUSHTON and HENRY B. WILLIS, for appellee.

Appellant says in hunting for a consideration for the contract, the burden of which is on her to establish, that if there had been no contract, and appellee had died first, that Martin would have been entitled to the homestead and dower in the real estate and one-third of her personal property. This right he relinquished by the contract, which was in itself a good and sufficient consideration. To refute the statement or exhibit the fallacy of appellant's theory in that particular we call the court's attention to a case cited by appellant, wherein it is decided that "the policy of the law in relation to home-steads is to preserve the same for benefit of the family, and not allow the same to be defeated by any ante-nuptial con-tract. McGee et al. v. McGee et al., 91 Ill. 548; McMahill v. McMahill, 105 Ill. 596.

Appellant's counsel says that "the rule of law is settled that where there are no children who have an interest in the award, and where the widow by an ante-nuptial contract fairly made has waived her right to the award, she will be bound by the contract.

Appellee says: "The rule of law is settled that a widow is entitled to the award, children or no children."

" Section 74, chapter 3, of the statute allowing said award to the widow, says it shall be her sole and exclusive property forever, and it applies to any widow. She need not have any family to get the award, but she is to receive more if she has a family; and the amount is graduated according to the size of the family; but the award, whatever may be the amount,

belongs to the widow as her sole and exclusive property."
McMahill v. Estate of McMahill, 113 Ill. 467.

We contend that a widow entitled to an award can not be
deprived of the same by an ante-nuptial contract unless fairly
made, and fairly made means for a valuable consideration in
lieu thereof.    The love, affection or society of a husband,
young or old, is no valuable compensation for the waiver
thereof; and that or  something equally intangible is the only
consideration deducible from the  evidence of appellant in
this case as the consideration flowing from the said Freeman
Martin to appellee in said contract.

Appellant's counsel contends that the marriage of Mr.
Martin with Mrs. White alone constitutes a consideration for
waiving her award or operates as an execution of the contract.

Marriage usually carries with it certain financial responsi-
bilities; her counsel contends in effect that they are avoided
in this case, and for nothing, or without valuable consideration;
and says that the same objection might have been made to
many ante-nuptial contracts, without citing a single authority;
and that in the face of the authorities that say it is against
the policy of the law to allow an ante-nuptial agreement to
defeat the widow's award, unless there is a full and adequate
compensation for the same.    Chap. 30, Secs. 70, 74, 75 and 76
R. S.; Phelps v. Phelps, 72 Ill. 545; McGee v. McGee, 91 Ill.
548; McMahill v. McMahill, 105 Ill. 596; Strawn v. Strawn,
53 Ill. 263; Weaver v. Weaver, 109 Ill. 225.

The only cases cited by the appellant that have any direct
relation to the widow's award are McMahill v. McMahill, 113
Ill. 401, and Spencer v. Bordman, 118 Ill. 353–358, and the
contracts there passed upon or adjudicated both provide for a
money consideration in lieu of  the award, which sums in lieu
thereof the parties entitled to accepted after the awards had
accrued under the statute, so that no cases relied upon by the
appellant have any application to the case at bar.   Upon
appellant's hypothesis appellee contends that the language of
the contract in this case does not cover the widow's award;
that the term "support" used in the contract can not be made
to mean an award which did not come into existence until the
death of Martin; that the contract was at best only executory

and might be repudiated by her. Weaver v. Weaver, 109 Ill. 234.

An ante-nuptial contract, to be binding on the widow, must be fair and just, and it must affirmatively appear that no advantage was taken of the weaker party at the time of the execution. Rockafellow v. Newcomb, 57 Ill. 186; Kline v. Kline, 57 Pa. 186; Shea v. Shea, 1 Lawyer's Report, 422, Pa. case; Tierman v. Reims, 92 Pa. 248; Ludwig's App.,101 Pa. 535.

C. B. Smith, P. J. This is an appeal from the Circuit Court of Kane County. The object of this proceeding is to have the court construe an ante-nuptial, or, as it is called in the record, a "special marriage contract," between Freeman Martin and Hannah E. White, entered into and executed by them on the date of their marriage.

The following is a copy of the contract:

"A special marriage contract between Freeman Martin, of the first part, and Hannah E. White, of the second part. Thus: That if the said H. E. White should be removed by death before or at the same time of the said F. Martin, the said F. Martin does bind himself, his heirs, executors, administrators and assigns, that he will release all right of dower and all right of support or claim or interest of every kind or description to any part of said Hannah E. Martin's property thereafter owned by her at the time of our marriage, or accumulated from the same thereafter, forever. And it shall be right and lawful for her or her heirs, administrators, executors or assigns to take possession of all that remains of the above said property and dispose of the same independent of the party of the first part forever.

And also the said Hannah E. White, of the second part, does bind herself, her heirs, administrators, executors and assigns, that if said F. Martin should be removed by death before or at the same time of the said H. E. White, that she will release thereafter all right of dower and all right of support or claim or interest of every kind or description thereafter to any part of said Freeman Martin's property owned by him at the time of our marriage, or accumulated from the same, forever.

And it shall be right and lawful for him or his heirs, executors, administrators or assigns to take possession of all that remains of the above said property and dispose of the same independent of the party of the second part, forever.

And under these conditions we, Hannah E. White and Freeman Martin, agree to be married hereafter.

In witness thereof we individually sign our names and affix our seals this 30th day of November, in the year of our Lord one thousand eight hundred and eighty-six.

FREEMAN MARTIN,     [SEAL.]<br>HANNAH E. WHITE.     [SEAL.]"

At the time of the execution of this contract Freeman Martin was a widower about sixty-five years of age, and had some five or six children by a former wife, and was possessed of an estate (chiefly in money) of the value of about $7,700.

At the same time Hannah E. White was a widow of sixty-four years of age, having also children by her former husband, and also possessed of some property (a house and lot, among other things) in her own right. Immediately after this contract was signed the parties were married, and lived together until the death of Freeman Martin in December, 1887.

The widow waived her right to act as administratrix of her husband's estate, and Lydia Edwards, the appellant, was appointed. Appraisers were appointed, who appraised the chattel property and made the widow's award, affixing it at $779.65. Appellee afterward made her relinquishment and selection, and selected $9.65 of the property, and elected to take the remainder of $770 in money.

The administratrix being in doubt about the right of the widow to this award under the terms of this marriage contract above set out, declined to pay it, and thereupon filed a petition in the County Court, setting up the contract and asking to have the court construe it and to determine whether under its terms appellee was entitled to the widow's award. Appellee answered the petition and admitted the execution of the contract and the marriage, Freeman Martin's death, her award and selection, etc., but makes a very feeble effort to

avoid the force and effect of the contract, by averring in her answer "that on the same day, and before the marriage cere-mony was performed, the said Freeman Martin presented a contract to her that had been prepared by him, or some one in his employ prior to that time, for her signature; that with-out examining the contract, and not knowing prior to that time what the terms of the contract were, and under the excite-ment of the occasion, she signed the contract." She further avers that she did not intend to release her widow's award and that she is advised that the contract could not have the effect to take from her the widow's award under the statute. There were no children born of this marriage.

The case was heard before the County Court, where the award was allowed to stand, and upon appeal to the Circuit Court the order of the County Court was affirmed, and appellant now presents her further appeal to this court and insists the Circuit Court erred in construing this contract.

On the trial in the Circuit Court there was no proof offered in support of the answer showing that any fraud or advantage had been taken by appellee in the execution of the contract or that she did not fully understand it and know its contents when she signed it. Counsel for appellee, however, insist that inas-much as this answer was sworn to it must have the same effect as evidence as a sworn answer in a chancery proceeding.

But we can not concur in this view. This proceeding was in no sense a proceeding in chancery, where the answer could have the effect of evidence, but even if it could it would not aid appellee, for she does not say in her answer that she did not know the contents of the contract when she in fact signed it.

The only thing before us, then, is to determine whether by the terms of the contract appellee waived any and all right to any portion of her husband's estate. We think there can be but one possible answer to this question, and that is that she did waive all interest in her husband's estate, and upon a sufficient consideration. Marriage itself is a sufficient con-sideration for an ante-nuptial contract fairly and understand-ingly entered into. But in addition to that there was the

Edwards v. Martin.

additional consideration moving to both contracting parties of mutual relinquishment of all interest in each other's estate.

What the effect of this kind of a contract would have been upon the right of the widow to her award in case there had been children born of the marriage, and who in that event would have had an interest in the widow's award, as being for the benefit of the family, under the statute, we express no opinion, since that kind of a question is not presented in this record. Here no rights are involved except those of the widow herself, and we entertain no doubt about her right to contract against such claims by an ante-nuptial agreement, where no fraud, collusion, overreaching, or advantage taken, is shown by the proof. Barth v. Lines, 118 Ill. 374; McGee v. McGee, 91 Ill. 548; McMahill v. McMahill, 113 Ill. 461; Spencer v. Boardman, 118 Ill. 553.

This class of contracts, however, should always be carefully scrutinized and watched by the court because they are frequently made under circumstances favorable to the stronger party, and under circumstances where the affections or dependent condition of the weaker party are liable to get the better of her judgment, and she is induced thereby to enter into contracts contrary to public policy, or to accept terms that are unjust and unconscionable.

In the case at bar, however, we find nothing to show any overreaching or advantage taken of appellee in the execution of the contract. It is clear to us from the proofs that she understood that it deprived her of everything belonging to her husband at his death, for she then offered to her husband's sons and heirs every particle of property she had received of him, as well as small articles of household goods which had been bought for the house while they were married, and in so doing she showed a much more commendable and worthy spirit than did the heirs, who were anxious and willing and did take from her the uttermost penny she had received through her husband, save a few pounds of coal and some vegetables in the cellar.

We are of opinion that the widow was not entitled to the award under this contract and that in allowing it the court

erred, and for that error the judgment is reversed and cause remanded.

Appellee has filed an amended abstract, and asks that the cost be taxed against appellant. This motion will be dismissed. We think there was no very urgent necessity for the amended abstract.

*Reversed and remanded.*