[No. 8541.    Department Two.    March 25, 1910.]

## UNITED STATES FIDELITY & GUARANTY COMPANY, Respondent, v. CORDIE C. LEE, Appellant.[1]

HUSBAND AND WIFE—SEPARATE PROPERTY OF WIFE—PROFITS—COMMUNITY PROPERTY. Under our community property laws authorizing every married woman to hold and dispose of her separate estate as if she were unmarried, the profit made by a married woman upon selling a contract for the purchase of land, prior to payment of the last two installments, is her separate estate and not community property, where she entered into the contract to purchase in her own name, her husband not joining, making the first payment out of separate estate, and giving her personal notes for five subsequent annual installments, and she then had separate moneys sufficient to make all the payments, and made two subsequent payments out of her separate estate; it appearing that she was dealing with her separate estate and that there was no intent to involve the community property.

Appeal by intervener from a judgment of the superior court for Adams county, Kennan, J., entered December 8, 1909, upon findings in favor of the plaintiff, in garnishment proceedings, after a trial on the merits before the court without a jury. Reversed.

*Merritt, Oswald & Merritt*, for appellant.
*Danson & Williams*, for respondent.

MOUNT, J.—Cordie C. Lee, the appellant here, intervened in a garnishment proceeding, and claimed as her separate property certain money on deposit in the Old National Bank

[1]Reported in 107 Pac. 870.

of Spokane, which money had been garnisheed upon a debt owing by her husband, O. M. Lee, to respondent. Upon trial the court found that a part of the money garnisheed was the separate property of the appellant, and that the balance was community property belonging to the appellant and her husband. The appeal is from the order adjudging the community interest.

There are no disputed facts in the case. Stated in chronological order the facts are, in substance, as follows: On April 4, 1902, O. M. Lee, then an unmarried man, became a surety to the respondent United States Fidelity and Guaranty Company upon an indemnity bond. On May 24, 1902, Mr. Lee was married to the appellant. At the time of the marriage, appellant was possessed of about $6,500, which she had inherited from her mother's estate. On November 9, 1905, appellant purchased a section of land from John Bovee for an agreed price of $3,200. She paid $640 in cash from her separate funds, and agreed to pay the balance in annual payments of $512 each, with interest at six per cent on deferred payments, and when the purchase price was fully paid a deed was to be delivered to her. She signed a written contract to that effect, and executed her personal notes for the deferred payments. At the time of this transaction, she had separate property in the hands of her brother in Kentucky sufficient to make the whole payment, and she intended to and did use this money to meet the payments when due. On December 1, 1906, she made the second payment of $512, and $153.60, interest, out of her separate property. In June, 1907, a judgment in the sum of $3,250 was obtained by the respondent against O. M. Lee, her husband, by reason of the indemnity bond above mentioned. On December 1, 1907, appellant paid out of her separate funds $512, and $122.88, interest, being the installment due on her contract at that time.

On March 4, 1908, appellant sold to R. L. Ford the land

2—58 WASH.

above referred to, for $6,400, and she and her husband joined in the contract of sale and deed. Appellant objected to her husband joining in the transaction, but upon the request of the purchaser and the advice of her attorneys that this would prevent any question of the community interest of her husband, the joinder was made. On March 30, 1908, a supplemental contract was made by which Mr. Ford agreed to pay to Mr. Bovec direct the balance due from appellant upon the purchase price of the land. This contract and deed were placed in escrow in the Old National Bank of Spokane. On December 1, 1908, Mr. Ford paid to Mr. Bovee $512 principal and $92.16 interest, being the fourth installment due Mr. Bovee on the contract with appellant. On December 28, 1908, a writ of garnishment was served on the Old National Bank, in the action wherein the respondent had a judgment against O. M. Lee. Thereafter the appellant intervened in the garnishment proceedings, and claimed the whole of the property in the hands of the bank as her separate estate. Pending the trial, Mr. Ford paid the balance of the purchase price of the land into the bank. The court concluded that $1,664, and certain interest, paid by the appellant out of her separate funds, entitled her to 1664-3200 interest in the funds as her separate estate, and that the balance paid by Mr. Ford into the bank was community property subject to the payment of the judgment against Mr. Lee. The question in the case is whether, under the facts stated, the proceeds of the sale of this land are wholly the separate property of the appellant.

The appellant acquired the property after marriage. She acquired it with her separate funds; that is, she made the contract in her own name without her husband joining her, and made three payments thereon out of her separate funds. It is true that she gave her individual notes for deferred payments, but at that time she had separate funds sufficient to make the whole payment. She did not desire to pay cash, and credit was extended for her accommodation.

The record does not show directly that the vendor who took the contract and the notes relied upon her separate estate. The record is silent upon that question. No deed passed, and it was agreed that the deed should not be delivered until payments were fully made or until a mortgage was given back. The vendor probably relied upon the land as security for the deferred payments, and therefore made no inquiry as to the responsibility of the appellant in her separate right. The appellant, however, had money available sufficient to make the payments, and intended to do so out of her separate funds without assistance from her husband, but before the time when all the payments became due she sold the land for double the purchase price, and thereby made a profit of $3,200 upon an investment of $1,939.40. The statutes of this state provide:

"The property and pecuniary rights of every married woman at the time of her marriage, or afterwards acquired by gift, devise, or inheritance, with the rents, issues, and profits thereof, shall not be subject to the debts or contracts of her husband, and she may manage, lease, sell, convey, encumber, or devise by will such property, to the same extent and in the same manner that her husband can, property belonging to him." Rem. & Bal. Code, § 5916.

Property not owned or acquired as above stated, but acquired after marriage, is community property. Rem. & Bal. Code, § 5917.

"Every married person shall hereafter have the same right and liberty to acquire, hold, enjoy, and dispose of every species of property, and to sue and be sued as if he or she were unmarried." Rem. & Bal. Code, § 5925.

"Contracts may be made by a wife, and liabilities incurred, and the same may be enforced by or against her to the same extent and in the same manner as if she were unmarried." Rem. & Bal. Code, § 5927.

It seems clear from these provisions that a married woman may deal with her separate property as if she were unmarried, and that money or other property owned by her at

the time of her marriage together with the "rents, issues and profits" of such money or property shall not be subject to the debts or contracts of her husband, and that she may manage, lease, sell, convey, and incumber such property in the same manner as her husband can property belonging to him. It is clear, therefore, that if the appellant had paid her separate cash for the section of land which she acquired by contract from Mr. Bovee, the profits arising from the sale thereof would have been her separate property. She did not pay cash. . She entered into a contract in her own name, without her husband joining her, to purchase the land. She made the first payment of $640 out of her separate estate. She agreed to pay the balance in five annual installments, and gave her personal notes for the deferred payments. She had the money or property in her separate estate which would be available and sufficient to meet these obligations when they matured. She afterwards paid the second and third installments out of her separate funds, but before the maturity of the fourth installment she sold the land, or more accurately speaking, the contract, thereby making a profit on the investment.

The evidence is reasonably certain that the transaction was the personal contract of the appellant dealing with her separate estate; that no community funds were invested, and there was clearly no intent to involve the community of herself and husband therein. If the personal notes signed by the appellant had not been given, it could not be said that there was any liability against either the appellant personally or against the community, for the contract was one by which the vendee agreed to convey the land to appellant when the payments were fully made. Time was made the essence of the contract, and it was provided that a failure to make any payment when due forfeited all payments made as liquidated damages. If a married woman may manage, sell, and incumber her separate property, and have the same right to acquire, manage and dispose of said property, and

to sue and be sued, as if she were unmarried, and if contracts may be made by the wife, and liabilities incurred and the same enforced by or against her, to the same extent and manner as if she were unmarried, as the statutes quoted above provide, it is difficult to understand why the appellant was not acting within and for her separate rights when she made the contract stated.

The presumption is that property acquired during the marital relation is community property, but this presumption may be rebutted. *Weymouth v. Sawtelle*, 14 Wash. 32, 44 Pac. 109; *Brookman v. State Ins. Co.*, 18 Wash. 308; 51 Pac. 395. This presumption has been met and clearly overcome in this case. The case of *Heintz v. Brown*, 46 Wash. 387, 90 Pac. 211, 123 Am. St. 937, was thought by the trial court to control this case. That case and the authorities therein cited are relied upon by the respondent for an affirmance of the judgment rendered in this case. In that case we said:

"From the foregoing statement it will be seen that the property acquired from the railway company and the mortgage company was paid for in part by the separate funds of the wife and in part by money borrowed on the property in which she had invested her separate funds. Under the rule announced by this court in *Yesler v. Hochstettler*, 3 Wash. 349, 30 Pac. 398, and reaffirmed on rehearing in *Main v. Scholl*, 20 Wash. 201, 54 Pac. 1125, the funds borrowed by the wife, even though borrowed on her separate property, or on property in which she had invested her separate funds, was community property, and to that extent at least the property in controversy was paid for with community funds and became community property."

We do not desire to further extend the rule announced in that case. In that case, and in the cases from this court there followed, the separate estates were not sufficient to make the purchases, and the credit of the community was drawn upon to complete the purchases. Money was actually borrowed and used for that purpose, so that a community obligation was created and a resulting community interest fol-

lowed. The property thus purchased was not acquired by separate property, or the rents, issues, and profits thereof. In the case at bar the appellant borrowed no money. Her separate estate was amply sufficient to meet the whole contract at the time it was entered into. She was not required to create a community obligation, and did not intend to do so. She entered into a contract which her separate estate was sufficient to protect, and which she partly performed with separate funds, and without doubt intended to carry out as her separate contract without community liability. In these respects this case is distinguishable from *Heintz v. Brown, supra.* If we apply the rule in that case to the facts in this case, we must hold that married persons may not purchase property as separate property, except for cash, and may not make contracts and incur liability to the same extent as though unmarried, which is squarely in the face of the statutes above quoted. Where property is acquired during marriage, the test of its separate or community character is whether it was acquired by community funds and community credit, or separate funds and the issues and profits thereof; the presumption always being that it is community property, but this presumption may be rebutted by proof. Tested by this rule, we are satisfied that the property in question here was wholly the separate property of the appellant. We are therefore of the opinion that the contract in this case created no community obligation which would necessarily take the case within the rule of the *Heintz* case.

The judgment appealed from is therefore reversed, and the cause remanded with directions to the lower court to declare the whole fund in the bank the separate property of the appellant.

RUDKIN, C. J., DUNBAR, and PARKER, JJ., concur.

CROW, J., took no part.