[No. 10169. *En Banc.* October 24, 1913.]

NANCY E. CLARK, *Appellant*, v. MARION BAKER *et al.*, *Respondents.*[1]

HUSBAND AND WIFE—COMMUNITY PROPERTY—ANTENUPTIAL CONTRACTS—CONSTRUCTION—EVIDENCE—WRITTEN CONTRACTS—PAROL EVIDENCE. An antenuptial contract whereby each party released all claim and interest as to the property belonging to the other at the time of the marriage, and mutually covenanted that all property acquired after marriage by the "mutual endeavor and labor" of both parties, over and above what is required for their support, shall be the joint property of both parties in equal parts, is plain and unambiguous, so as to render inadmissible parol evidence of an intent to make future rents, issues, and profits of separate estate their

[1]Reported in 135 Pac. 1025.

common or community property; and the contract being silent as to the rents, issues, and profits of the separate property of each, they follow the property from which they spring; since the statute Rem. & Bal. Code, §§ 5915, 5916, so fixes the status of such rents, issues, and profits.

SAME—ANTENUPTIAL CONTRACTS—CONSTRUCTION. An antenuptial contract in order to cover property to be subsequently acquired in a foreign state, must use words making the contract specifically applicable to property so acquired.

SAME — HUSBAND'S SEPARATE ESTATE — EVIDENCE — SUFFICIENCY. Where a husband at the time of his marriage, held a contract for railroad land upon which one payment had been made, and after the marriage, the parties engaged in farming operations in which there was no profit, but the husband sold sufficient cattle (his separate property) to pay the balance of the purchase price of the railroad land, title to which was taken in his name, it sufficiently appears that it was paid for out of his separate funds and not out of community property, and therefore it became his separate property.

HOMESTEADS—WIDOW'S RIGHT—SEPARATE PROPERTY OF HUSBAND—NONINTERVENTION WILL. Where the husband, at the time of his death, had made no declaration of homestead, his widow, although there was no issue, is entitled to a homestead in the separate property of her husband for "a limited period" under Rem. & Bal. Code, §§ 1465, 1466; hence a widow 72 years of age, having a life expectancy of about seven and one-half years, should be granted a life estate in the homestead occupied as such for several years by her and her deceased husband, title to vest upon her death in the devisees under her husband's will.

SAME—WIDOW'S RIGHTS—REMEDIES—EQUITY OR PROBATE. In the case of a nonintervention will, in which the estate is adjudged solvent and the trust accepted, the probate court has no jurisdiction; and where the executors deny the widow's right to a homestead claimed by her, and seek to exclude her therefrom, equity is the proper forum to fix and determine her rights.

COSTS—COST BILL—TIME FOR FILING. A cost bill, filed more than ten days after the entry of the judgment, is too late, under Rem. & Bal. Code, § 482, and is therefore properly stricken.

CROW, C. J., and PARKER, J., dissent.

Cross-appeals from a judgment of the superior court for Spokane county, Huneke, J., entered July 14, 1911, in an action for equitable relief, after a trial on the merits. Modified.

*H. M. Stephens,* for appellant.

*Hanna & Hanna* and *George E. Canfield,* for respondents.

Gose, J.—The plaintiff filed a bill in equity for the purpose of establishing a community interest in the estate of her deceased husband, George N. Clark. Both the plaintiff and the defendants have appealed from the final decree, and they will be referred to as plaintiff and defendants.

George N. Clark died testate on the 17th day of April, 1910. He left a nonintervention will. His estate was adjudged solvent and the will is being executed by the defendants as his executors. The only mention of the plaintiff in the will appears in the following language:

"Whereas my wife, Nancy E. Clark, and I prior to our marriage entered into a marriage contract affecting the property which we severally owned at that time, and whereas her property so affected by said contract and the natural increase thereof is ample to support her in comfort during her lifetime, it is my will and desire and I hereby direct that my executors or the survivor of them shall execute to her a quit claim deed of all property that she owned at the time of her said marriage and all that has been a natural outgrowth of the same (in case there is any not heretofore quitclaimed by me to her), so that her title thereto will not be clouded on account of our said marriage and that my entire estate pass as hereinbefore provided."

The testator left all of his estate to the children and grandchildren the issue of himself and a former wife.

The plaintiff and George N. Clark were married in the state of Oregon on the 21st day of May, 1890. Clark then resided at Oakesdale, in this state. At the time of the marriage, they mutually intended to make this state the family domicile. In obedience to that intention, they went to Oakesdale a few days after their marriage, and resided there until sometime in March, 1891, when they moved upon a farm belonging to the husband, near St. John, in Whitman county, where they resided until November, 1899, when they moved

to Spokane, where they resided until the decease of the husband. The plaintiff has since continued to live upon the homestead in Spokane, which had been the family home for eleven years before her husband's death.

Both the plaintiff and Clark had been married before, and each had children by the former marriage. The plaintiff, at the time of her marriage to Clark, owned real estate in the state of Oregon. Clark at that time owned about 390 acres of land in that state. He also owned 480 acres of land in Whitman county, this state, and had a contract with the Northern Pacific Railway Company for the purchase of 320 acres of land in Whitman county. This contract was made in 1887. He had made at least one payment on this contract at the time of his marriage. He acquired the legal title to the railroad land in 1897. At the time of the marriage, he owned personal property in Whitman county, this state, consisting of about 250 head of mixed cattle, 26 work horses, 9 colts, and about $800 in money.

The plaintiff and the deceased lived upon the Whitman county land from March, 1891, until November, 1899, and farmed the land from 1891 to 1896 inclusive. Between the harvest of 1896 and the death of the deceased, the land was rented upon a cash rental for two years, and for either one-third or one-half the crop the remaining time. The farming operations of 1891 and 1892 were confined to less than 100 acres a year, and little or no profit was made. In 1893, about 500 acres were cropped and harvested, but owing to the unprecedented rains of that year, while the crop was large, it was so damaged that it did not pay harvesting expenses. In 1894, 1895, and 1896, the crop was light and the prices were so low that no profit was made. The record shows conclusively that no profit resulted from the farming operations of the plaintiff and her husband during the period that they actually conducted the farm. The testimony accords with the experience and observation of those who were

in touch with the farming conditions in Eastern Washington at that time.

Immediately prior to the marriage, the plaintiff and Clark executed the following antenuptial contract:

"Agreement made this 21st day of May, 1890, at Lane county, state of Oregon, by and between George N. Clark, party of the first part, and Nancy E. Lemon, party of the second part, Witnesseth, that whereas the said parties of the first and second part contemplate marriage, and whereas the party of the first part is the owner of real property situated in the states of Oregon and Washington and has a family of sons and daughters by a former marriage, and whereas the party of the second part is the owner of real property situated in the state of Oregon and has a family of children by a former marriage, Now therefore it is mutually covenanted by and between the parties of the first and second part that, in consideration of the marriage of the one to the other, That the party of the first part doth hereby and by these presents remise and relinquish now and forever all right, title, interest or claim in or to any and all of the real property and personal property which may belong to the party of the second part at the time of the marriage of the parties hereto, and if the said party of the second part shall die prior to the party of the first part, all of her lands and personal property owned by her in her own right shall belong to and be the property of the children of the party of the second part, and the party of the first part shall not claim or have an estate by courtesy in any part of the lands or personal property of the party of the second part, and the party of the first part doth hereby agree to sign deed or deeds at any time during said marriage for the sale of said property shall the party of the second part so desire. And the party of the second part in consideration of said marriage hereafter to be solemnized between the parties hereto doth hereby and by these presents renounce and relinquish now and forever all right, title, interest or claim in or to any and all of the real property and personal property which may belong to the party of the first part at the time of the marriage of the parties hereto, and if the party of the first part shall die prior to the party of the second part all of the land and personal property owned by him in his own right

shall all belong to and be the property of the children of the party of the first part, and the party of the second part shall not claim or have any estate of dower in any part of the lands or personal property of the party of the first part. And the party of the second part doth hereby agree to sign deed or deeds at any time during said marriage for the sale of said property shall the party of the first part so desire.

"*It is further mutually covenanted by and between the parties hereto that all property acquired after marriage by the mutual endeavor and labor of both parties, over and above what is required for their support, shall be the joint property of both parties in equal parts.* [Italics ours.]

"Witness our hands and seals this 21st day of May, 1890.
                    "George N. Clark (Seal)
                    "N. E. Lemon     (Seal)."

It will be observed that the essential features of the contract are: (1) That Clark disclaims all interest in the property, both real and personal, then owned by the plaintiff, including "courtesy." (2) That the plaintiff makes a like disclaimer as to all property, both real and personal, then owned by Clark, including "dower." (3) That they agreed that "all property acquired after marriage by the mutual *endeavor and labor* of both parties, over and above what is required for their support, shall be joint property of both parties in equal parts." It will also be observed that the contract is silent as to the rents, issues, and profits of the separate property of the contracting parties.

"Property and pecuniary rights owned by the husband before marriage, and that acquired by him afterwards by gift, bequest, devise or descent, *with the rents, issues, and profits thereof*," is his separate property. Rem. & Bal. Code, § 5915 (P. C. 95 § 25).

"Property and pecuniary rights" owned by the wife before her marriage and that later acquired by her in the manner set forth in § 5915 is her separate property. Rem. & Bal. Code, § 5916 (P. C. 95 § 9).

Property not acquired or owned as prescribed in the two preceding sections, acquired after the marriage by either hus-

band or wife or both, is community property. Rem. & Bal. Code, §5917 (P. C. 95 § 27).

The court admitted testimony of the declarations of the deceased in his lifetime respecting the purpose of the contract, on the theory that the contract is ambiguous, but later reached the conclusion that it is not ambiguous. The court concluded that the railroad land was presumably paid for after marriage, in part with community funds and in part with the separate funds of the deceased; that these funds had been so commingled that they could not be separated; that the railroad land was community property and that the rents, issues, and profits arising from that land was commingled with those arising from the separate property of the deceased; and hence that all property thereafter acquired was community property.

The court was right in holding that the contract is unambiguous. It is plain, specific and direct in its terms and clearly speaks the minds of the contracting parties. The court, however, was wrong in his conclusion that the railroad land was community property. There were no community funds, hence there could be no commingling. In 1892, Clark had the sod broken on the railroad land, and paid for the breaking, with horses which he owned before marriage. The same year he sold cattle to the amount of $1,900, and in 1894 he sold cattle to the amount of over $1,100. These cattle were his separate property. The court, in passing on the case, said that the parties in entering into the contract did not intend "to build a wall around each ones own property." We think this is precisely what they did intend to do, and the contract, as we read it, expresses that intention in unequivocal terms. The fact that they undertook to free their respective properties from "courtesy" and "dower" rights, which had and have no existence in this state, strengthens that view. They made no direct provision for the rents, issues and profits of their respective properties, and these funds follow the properties from which they spring,

and our statutes define their status. Where it is desired to provide, by an antenuptial contract, for property acquired in a state foreign to the place of the contract, subsequent to the making of the contract, the contract must speak to the very point—that is, it must use words making the contract specifically applicable to property so acquired. *Long v. Hess*, 154 Ill. 482, 40 N. E. 335, 45 Am. St. 143, 27 L. R. A. 791; *Kneeland v. Ensley*, 1 Meigs (19 Tenn.) 620, 33 Am. Dec. 168; McKay, Community Property, §§ 570, 571.

Aside from the railroad land, all of the property in controversy, except a tract purchased with the proceeds of the sale of Clark's land in Oregon, was acquired by purchase subsequent to the time the actual farming operations of the parties ceased. The first purchase was made in October, 1899, and the last in January, 1910. It is needless to prolong the discussion upon the main issue. The evidence shows conclusively that no profit was derived from the farming operations of the plaintiff and her husband, and that the railroad land and all property purchased by Clark subsequent to the marriage was paid for out of the rents, issues, and profits of his separate property. It follows that there was no community property at the time the community was dissolved by the death of the husband. *Guye v. Guye*, 63 Wash. 340, 115 Pac. 731, 37 L. R. A. (N. S.) 186; *Dobbins v. Dexter Horton & Co.*, 62 Wash. 423, 113 Pac. 1088; *Worthington v. Crapser*, 63 Wash. 380, 115 Pac. 849; *United States Fidelity & Guaranty Co. v. Lee*, 58 Wash. 16, 107 Pac. 870.

On the 10th day of June, 1910, after the death of her husband, the plaintiff duly executed a declaration of homestead and filed it for record upon the same day. It embraces lot 2 in block 10, in Wadsworth & McDonald's addition to Spokane, which was the separate property of her husband. The plaintiff and her husband had resided upon this property from the fall of 1899 until his decease, and she has since resided thereon. The husband did not make a declaration of homestead during his lifetime. There was no issue of the

marriage between the plaintiff and the deceased, and the record does not show that there is any one living on the premises with her and under her care and maintenance. The court refused to give the plaintiff a homestead upon this property, presumably upon the theory that her rights, if any, in this respect should be taken care of in the probate court. Counsel for the executors say in their brief that they do not concede her right to a homestead. We entertain no doubt upon this question. She is entitled to a homestead in the separate property of her husband for "a limited period." Laws 1895, p. 109, § 2, and p. 114, § 33; Rem. & Bal. Code, §§ 1465, 1466 (P. C. 409 §§ 325, 327) ; *Fairfax v. Walters*, 66 Wash. 583, 120 Pac. 81; *In re Lloyd's Estate*, 34 Wash. 84, 74 Pac. 1061; *Austin v. Clifford*, 24 Wash. 172, 64 Pac. 155. The right to a homestead accrues to "a widow" as such, when there are no minor children. Rem. & Bal. Code, § 1465 (P. C. 409 § 325).

After a nonintervention will has been proven, the estate adjudged solvent and the executors named in the will have accepted the trust, the estate is removed from the jurisdiction of the probate court, except as otherwise provided in the statute in reference to nonintervention wills; and courts of equity are, thereafter, the proper forum for the determination of such issues as are here tendered. *In re Guye's Estate*, 63 Wash. 167, 114 Pac. 1041.

The plaintiff filed her cost bill more than ten days after the entry of the judgment. The cost bill was stricken upon the motion of the defendants. This is assigned as error. There was no error in the ruling of the court. Rem. & Bal. Code, § 482 (P. C. 81 § 1291).

The court correctly found that lot 1, block 4, of Union Park addition to Spokane, was the separate property of the plaintiff. It was purchased with the funds arising from the sale of land in the state of Oregon which she owned at the time of her marriage. There is no controversy over this property.

The case will be remanded with directions to enter a decree in favor of the defendants upon all the issues except the homestead and lot 1, block 4, Union Park addition to Spokane. The plaintiff is seventy-two years of age. She has a life expectancy of about seven and one-half years. The court is directed to assign to her lot 2, block 10, in Wadsworth & McDonald's addition to Spokane, as a homestead for and during her natural life, the legal title to vest in the devisees of Clark subject to this right.

Neither party will recover costs in this court.

CHADWICK, ELLIS, MORRIS, MAIN, MOUNT, and FULLERTON, JJ., concur.

CROW, C. J. (dissenting)—I dissent, being of the opinion that in all respects the judgment of the trial court should be affirmed. Having read the entire record, I will, before expressing my views, make a statement of material facts and issues which I gather therefrom.

In May, 1890, the plaintiff Nancy E. Clark, formerly Nancy E. Lemon, and George N. Clark, now deceased, were intermarried in the state of Oregon. Prior to their marriage, the plaintiff was a widow, the mother of several children by a former husband, and owned real estate in the state of Oregon. George N. Clark, prior to said marriage, was a widower, father of several children by a former wife, and owned real estate in Oregon, and real estate, horses, cattle, and other property in Washington. His Washington land, to which he held the fee simple title, consisted of 480 acres in Whitman county, 160 thereof being mortgaged for $700. He then had a contract with the Northern Pacific Railroad Company for the purchase of an adjoining tract, the north half of section 25, in township 19, north of range 41, east W. M., in Whitman county. On this contract he had made one small payment, the amount of which has not been shown. Immediately prior to their marriage, Nancy E. Lemon and George N. Clark executed the written agreement set forth in

the majority opinion. Within a few days after their marriage, the plaintiff and her husband proceeded to Whitman county, at first making their home in Oakesdale, but shortly thereafter they settled on the Whitman county land, not more than 80 acres of which was then in cultivation. They continued to reside on this land, improving and cultivating it, until about the year 1899, when they moved to Spokane, where they lived until the death of George N. Clark which occurred on April 17, 1910. There was no issue of their marriage. While they lived together as husband and wife, payments were completed on the north half of section twenty-five in Whitman county, and on October 19, 1897, the same was conveyed to George N. Clark by warranty deed. During their residence in Whitman county and in Spokane, George N. Clark acquired title to a number of Spokane city lots, some of them improved. He also acquired title to a certain tract of improved real estate in Spokane, which he and plaintiff occupied as their home until the date of his death. This property is still occupied by plaintiff. While living in Spokane, George N. Clark sold the Oregon land which he owned prior to his marriage, and with a portion of the proceeds of that sale, purchased real estate in the city of Spokane, which he later traded for a tract of land in Spokane county, known and designated in the record as the Cheney farm. This farm was purchased subject to a mortgage lien for about $900. During their residence in Spokane, the plaintiff, Nancy E. Clark, sold her Oregon land which she owned prior to her marriage, and invested the proceeds of that sale in an improved lot in Union Park, an addition to the city of Spokane. This place has a rental value of about $12.50 per month, and is conceded to be plaintiff's separate property.

George N. Clark died testate, having executed a nonintervention will about six weeks prior to his death. His estate was adjudged solvent and is being administered by the defendants, Marion Baker and George Henry Clark, whom he named as executors. The only mention of Nancy E. Clark in

this will is quoted in the majority opinion. All of the decedent's property was devised to the children and grandchildren of himself and his first wife. The executors took possession, and assumed the exclusive management, of the entire estate, (except the homestead) including all property real or personal, whether acquired before or after marriage, claiming the same to be the separate property of the deceased, and insisting that the plaintiff had no community or other interest therein. Although the plaintiff still occupies the home, and, since the death of her husband has filed a declaration of homestead thereon, the executors insist that it also was the decedent's separate property, deny her right to a homestead therein, and only concede the Union Park property to her as her separate estate. In other words, they insist that all the property, with the exception of the Union Park place, was the separate property of George N. Clark; that the widow has no interest therein, and that it has all been devised to the legatees named in the will.

After making written demand for an allowance of her claim, and a recognition of her rights, the plaintiff commenced this action against the executors and legatees, to have her rights ascertained and adjudicated, claiming her community interest in and to all property of the estate acquired subsequent to the marriage. The defendants denied that she held any title or interest, legal or equitable, in or to any of the property, real or personal, save and except the Union Park place, and alleged that all property acquired after the marriage was either purchased with proceeds of sales of the stock and its increase which the decedent owned prior to his marriage, or with the proceeds of crops and rentals from the Whitman county land, and that all of the property thus acquired was the separate property of George N. Clark at the date of his death. Trial was had upon these issues. The evidence, which is conflicting, is presented in a record of such interminable length that it cannot be well quoted, analyzed, and discussed in an opinion of moderate length. The trial judge held

that a considerable portion of the property to which George N. Clark held record title at the date of his death, was the community property of himself and wife. Some contention was made, in the pleadings and during the trial, to the effect that the antenuptial contract was ambiguous. Upon this question, the trial judge announced his conclusion in the following language:

"I think this contract is not ambiguous; I think it sets forth the intention of the parties with sufficient clearness to determine what they meant to do. They first dispose of all property that they owned at that time, and then this last clause provides for the property that will be acquired in the future, and it provides that all property to be acquired by the mutual endeavor of both parties, over and above what is required for their support, shall be the joint property of both parties in equal parts. Now, I do not think they intended by that agreement to set aside the property that each had at that time and do nothing with it, but their intention was that that property might be used, and that whatever they acquired after that time should be the joint property of the two of them; that is to say, whatever remained after the money had been expended necessary for their support. It seems to me that is the only reasonable construction that can be put on this contract."

After making this announcement and hearing the evidence, he in substance found, that all incomes of the plaintiff and decedent from every source were placed in a common fund; that all their funds were commingled, no accounts being kept; that it was their intention to equally own all property acquired after marriage; that one payment only, the amount of which was not shown, had been made by the decedent prior to his marriage, on the north half of section twenty-five, in Whitman county; that all other payments were made from funds belonging equally to the plaintiff and the decedent; that the north half of section twenty-five thus became joint, common, and community property; that the community paid $2,400 upon separate debts of the decedent; that there was no evidence of the extent of the income, if any, from the de-

cedent's separate property in the state of Oregon; that the Cheney farm was purchased with the separate funds of the deceased; that the $900 mortgage on the Cheney farm was paid with community funds; that specified real property, described in the findings, consisting of a number of improved and unimproved lots in the city of Spokane, and the north half of section twenty-five in Whitman county, was acquired after marriage in conformity with the antenuptial contract and became community property; that the plaintiff was the owner of an undivided half interest in all personal property; that all the property in which plaintiff owns an undivided half interest was acquired after marriage, by the mutual efforts and labor of the husband and wife over and above what was necessary for their support; that the trial judge did not undertake to fix the character, or amount of the personal property; that he declined to consider the amount of rents received subsequent to the date of the husband's death, and that he also declined to consider in this action plaintiff's homestead rights.

A decree was entered in accordance with these findings, which adjudged plaintiff's interest in the community property, protected her right to a further accounting from the executors, awarded costs to be paid from the decedent's estate, but declined to pass upon the validity of the homestead declaration, or require an accounting in this action. After entry of the decree, plaintiff filed a supplemental petition to compel an accounting. Upon defendants' motion, this pleading was stricken, reserving, however, plaintiff's right to a future accounting. Plaintiff filed her cost bill more than ten days after entry of the decree. Upon defendants' motion it was stricken, and only a portion of the costs claimed were taxed by the clerk of the court.

It seems to me that this statement, which I feel is justified by the record, substantially disposes of the defendants' appeal. I do not assert that I have stated in detail all final orders made by the decree. It is unnecessary to do so. The

controlling issues were (1) whether there was any community property, (2) if so, what portion of the estate was community property, and (3) what charges, if any, should be allowed to the widow against the decedent's separate estate and his portion of the community property, for disbursements of community funds which had been made for the benefit of the decedent's separate estate—such, for instance, as disbursements to discharge liens on his separate property. Findings were made in substance as above stated, covering all of these issues, and I conclude there was ample evidence to sustain each and every finding thus made. In my opinion, the antenuptial contract was properly construed by the trial judge. It was the undoubted intention of the parties thereto that all property acquired after marriage and not necessary for their support should become their joint or community property. The preponderance of the evidence sustains a finding that such was the mutual intention of the plaintiff and the decedent. On numerous occasions the testator so expressed himself, and his actions were at all times in harmony with that construction. The widow is about seventy years of age. Her husband was somewhat older. The estate is large, valuable, and free from debt. There is no suggestion that differences, want of harmony, or lack of mutual affection ever existed between the plaintiff and her husband. On the contrary, they were at all times devoted and affectionate, one to the other. It seems preposterous that the testator intended to disinherit her, or that he could have understood that he was leaving her in a position of practical penury, compelling her to rely upon her Union Park property for support, its rental value being only about $12.50 per month. It would rather seem that, when executing his will, he considered that her separate property, coupled with her interest in a large amount of community property which he could not devise, would afford her ample support. True the will mentions her separate property and its increase as her means of support. It does not appear that there ever was any increase in her separate prop-

erty; but whatever the decedent's view may have been when
making his will, I am satisfied that there was a large amount
of community property, as found by the trial court, one-half
of which was not subject to a testamentary disposition by
the decedent. Under the evidence, and the antenuptial con-
tract, which I think was properly construed by the trial
court, I conclude that the property acquired after marriage,
save and except the Cheney farm and the Union Park place,
was community property.

In the absence of controverting evidence, and independent
of any contract, the presumption of law is that property ac-
quired after marriage is community and not separate prop-
erty. This *prima facie* presumption may be rebutted by
competent evidence. *Weymouth v. Sawtelle,* 14 Wash. 32,
44 Pac. 109; *United States Fidelity & Guaranty Co. v. Lee,*
58 Wash. 16, 107 Pac. 870. Such evidence, however, must
amount to clear and convincing proof that the consideration
paid for the property in question came from the grantee's
separate estate. In the instant case, I am unable to find such
proof. The preponderance of the evidence shows that plain-
tiff and the decedent kept but one fund; that all receipts after
their marriage were commingled; and that neither separation
nor segregation thereof was made. This being true, such
commingling, coupled with the *prima facie* presumption of the
law above mentioned, I regard as sufficient, in the light of
the antenuptial contract, to establish the community char-
acter of the property which the trial court has found to be
community property.

The plaintiff on her appeal insists, (1) that the trial judge
should have decreed the validity of her homestead declara-
tion; (2) that he should not have stricken her supplemental
complaint, but should have required an accounting in this
action; (3) that he should have allowed her $1,200 as a claim
against the estate of the decedent for one-half of the $2,400
of disbursements above mentioned, which were made in pay-
ment of debts her husband contracted prior to his marriage,

and which disbursements she claims were made from the common funds of the community estate; (4) that the trial judge should have decreed the Cheney farm to be community property; and (5) that he erred in striking her cost bill. The final decree of the trial court, if permitted to stand, would protect the plaintiff's right to have the validity of her homestead declaration adjudged in some future action or proceeding. It would also protect her right to a future accounting by the executors and legatees. There is not sufficient evidence in the record to enable this court to finally pass upon these issues in a trial *de novo*, and as plaintiff's rights in these regards would have been protected by the decree of the trial judge, his orders should not be disturbed.

The conflicting evidence disclosed by the record will account for the marked discrepancy between the findings of the majority and those which I would make. In my opinion, this evidence preponderates in favor of the findings and conclusions of the trial judge, which should not be disturbed. He saw the witnesses, heard them testify, and was in a much better position to pass upon their credibility and the weight of this evidence than are the members of an appellate court. For twenty years plaintiff and her husband lived harmoniously. In that time they acquired a large amount of property in addition to the testator's separate estate. The evidence convinces me, as it convinced the trial judge, that much of this increment was community property, and that it was so regarded by the testator and his wife. With due respect for the views of the majority, I cannot escape the conviction that a decree adjudging all such property to have been the testator's separate estate deprives the widow of her legal and equitable rights, and I most earnestly interpose my protest against the entry of any such decree upon the record now before us. My conclusion is that the pleadings and evidence sustain all orders made; that the record is free from prejudicial error; and that in all respects the judgment should be affirmed.

PARKER, J., concurs with CROW, C. J.