[No. 12178. Department Two. January 5, 1915.]

H. M. KOONTZ *et al.*, *Appellants*, v. SOPHIA C. KOONTZ, *Respondent*.[1]

WILLS — REVOCATION — MARRIAGE — PROVISION FOR WIFE. Under Rem. & Bal. Code, § 1323, providing that marriage revokes a prior will of the testator, if the wife shall be living at the time of his death, unless provision shall have been made for her by marriage settlement or the wife be provided for or mentioned in the will, an understanding before marriage that, when either should die, the survivor should have no interest in the decedent's estate, is not a "provision" for the wife by marriage settlement which could toll the revocation of the will.

FRAUDS, STATUTE OF—CONTRACTS IN CONSIDERATION OF MARRIAGE. An understanding before marriage that, when either should die, the survivor should have no interest in the decedent's estate, is not merely an agreement in contemplation of marriage, but is a promise made "upon consideration of marriage," and void under Rem. & Bal. Code, § 5289, unless made in writing.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered March 10, 1914, upon findings in favor of the defendant, denying the admission of a will to probate. Affirmed.

*G. W. Sommer* and *A. J. Laughon*, for appellants.
*Charles A. O'Connor* and *Hubert P. Swing*, for respondent.

ELLIS, J.—This is an appeal from a decree of the superior court of Spokane county, in probate, denying admission of a will to probate on the ground that it had been revoked by the marriage of the maker subsequent to its execution.

The following facts are not disputed. On January 3, 1911, the deceased, Joseph N. Koontz, made a will bequeathing and devising all of his property to the appellants, his two sons. He was then a widower. On December 15, 1912, he married the respondent, who was a widow. It was admitted in argument that both were then well advanced in

[1]Reported in 145 Pac. 201.

years. He then owned real estate worth about $3,000, and had between $3,000 and $4,000, in money. She owned a home worth between $3,000 and $4,000. They lived together as husband and wife until his death on January 29, 1914. In the will of January 3, 1911, the deceased made no provision for, nor any mention of the respondent, nor did he ever make any other will or codicil.

The appellants sought to show, by the parol testimony of several relatives and friends, that the deceased had at different times stated, but not in the presence or hearing of the respondent, that he and the respondent, prior to their marriage, had an express understanding that, when either should die, the survivor should have no interest in the decedent's estate. This evidence was admitted subject to the objections of respondent that such an agreement was, under the statute of frauds, void unless in writing, and that no written evidence of such an agreement had been offered. No proof of any such agreement in writing was ever offered. The respondent testified that neither before nor after the marriage did she and the deceased enter into any contract or agreement in writing settling their property rights as between themselves. She was not asked nor did she say whether any such verbal agreement was made or not. There was evidence that the deceased held a mortgage on the home of the respondent securing a note for the sum of $750. This mortgage and note, with an assignment from the deceased to the respondent, written upon the back of the note, was found in a tin box in which the deceased had kept his private papers. Neither of these instruments is in evidence and it does not clearly appear when they were executed. There is an inference, however, that both were executed subsequent to the marriage, since it appears that the mortgage was made to take up a prior debt secured by a mortgage upon the respondent's home which the deceased paid.

At the close of the hearing, the court ruled out all of the oral testimony touching the alleged antenuptial agreement,

and found, in substance, the foregoing admitted facts and further, "that said deceased did not at any time make provision for the said Sophia C. Koontz, his widow, by marriage settlement or in any other manner." The appellant excepted to the latter finding. The court concludes, as a matter of law, that the will of the deceased was revoked by the marriage to Sophia C. Koontz who survived him, and hence was not entitled to admission to probate. The decree went accordingly.

The making of the above quoted finding and the conclusions of law and the decree based thereon are assigned as error.

We think the decree should be sustained for two reasons, (1) because, even conceding the validity of the alleged antenuptial agreement, it made no provision for the widow; (2) because the alleged agreement rested in parol and was void under the statute of frauds. Both questions are new ones in this state. We shall therefore consider them with some care.

I. The statute relative to revocation, Rem. & Bal. Code, § 1323 (P. C. 409 § 35), is as follows:

"If, after making any will, the testator shall marry and the wife shall be living at the time of the death of the testator, such will shall be deemed revoked, unless provision shall have been made for her by marriage settlement, or unless she be provided for in the will, or in such way mentioned therein as to show an intention not to make such provision, and no other evidence to rebut the presumption of revocation shall be received."

Touching the question here involved, there is no ambiguity in this statute. Its terms are clear and explicit. We must assume that it means what it says. In *In re Adler's Estate*, 52 Wash. 539, 100 Pac. 1019, a case mistakenly relied upon by the appellants, we said, touching this statute:

"When the legislature has assumed to speak upon a given subject, courts must take its expression as it is, and if it be certain in its terms, there is no reason for speculation as to

its reasons, nor warrant for adding anything to meet a given case."

In that case we also held that the several contingencies tolling the revocation are stated in the statute disjunctively, as they clearly are, and must be so applied. The statute says, such will shall be deemed revoked, unless *provision* shall have been made *for her* by marriage settlement, *or* unless she be provided for in the will, *or* in some way mentioned *therein* as to show an intention not to make such provision, *and no other evidence to rebut the presumption of revocation shall be received.* Clearly evidence *aliunde* the will itself, of an intention not to make any provision for her, would be inadmissible whether oral or in writing. The disjunctive statement of the contingencies, followed by the statement that no other evidence shall be received, clearly limits the evidence in each contingency to the appropriate proof of that contingency. The first contingency is a *provision* made for her by marriage settlement. The tolling of the revocation on that ground can only be proved by that means. Proof of a settlement such as that here advanced denying her any provision from his own property even as his heir, would not be sufficient since such a settlement would make no provision for her, but quite the contrary. It would take away that provision which, but for the agreement, the law would give her. Nor can it be said that decedent's relinquishment of any prospective claim, to her property as her heir would be sufficient, since the testator's death prior to that of the other spouse offers the sole field for the operation of the statute of revocation or any part of it. Clearly permission to retain her own property after his death, which she would retain on his death in any event would be no provision for her. It seems plain that if, as we have held, the statute means what it says, the settlement here claimed, even if established by competent evidence, made no provision for the surviving wife, hence did not toll the revocation. Had the settlement been mentioned in the will itself, a different question would be presented.

*Clark v. Baker,* 76 Wash. 110, 135 Pac. 1025. In that case, the will itself would have furnished the requisite statutory evidence to invoke the third contingency tolling the revocation. It will not do to say that the view here expressed rests in a technical construction of the statute, in that any provision however small would meet it. It is not technical. It is not even construction. It is the statute. The argument suggested should be addressed to the legislature. *In re Adler's Estate, supra.*

II. In any event the agreement here in question rested in parol and was subject to the ban of the statute of frauds, Rem. & Bal. Code, § 5289 (P. C. 203 § 3), which so far as material reads:

"In the following cases, specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say:  .   .   .  every agreement, promise or undertaking made upon consideration of marriage, except mutual promises to marry;  .   .   ."

The sum of the appellants' argument to the contrary is this: that the agreement was made in contemplation of marriage, but was not made "upon consideration of marriage;" that while, of course, the agreement would not have been made had the parties not then intended to marry, and to that extent the prospective marriage entered into it and was considered by them, still the gist of the transaction was the mutual promise that each made to the other as to the future status of the property which each then owned. This argument is engaging, but is, as it seems to us, unsound. Where, as here, the antenuptial agreement is induced on both sides solely by the contemplated marriage and by its terms shows the single purpose on each side to preserve, after the marriage, the status which each would occupy toward the property of the other had there been no marriage, it is obvious

that the marriage is the sole inducement to and the moving consideration for every promise made by each of the contracting parties. It is idle to say that the promise of each is made in consideration of the promise of the other. But for the marriage, neither had any right or interest present or prospective, in the property of the other to relinquish when the promise was made, and neither relinquished or agreed to relinquish to the other any right in his or her own property in any event. The mutual promises related to a property status to be created by the marriage and which would have no existence but for the marriage. But for the marriage there would be neither subject-matter, actual or potential, nor consideration, present or future, for either promise. This clearly distinguishes the case here from that instanced in Browne on the Statute of Frauds (5th ed.), § 215b (cited by appellants) as an example of a promise made in *expectation or contemplation* of marriage as distinguished from a promise made *upon consideration* of marriage. The text cited reads as follows:

"The distinction should be carefully noted between agreements in *consideration* of marriage, and agreements, which are merely in *expectation* or *contemplation* of marriage. In order that the contract shall be within the statute, marriage or the promise of marriage must have been its consideration or inducement. In a case where an intestate, about seven years before his marriage, borrowed money from the person who afterward became his wife, and in an interview with her shortly before their marriage, promised her that if she would not enforce payment of the notes, they should remain good and collectible against his estate, and she retained the notes during the coverture and after his death, it was held that, although the promise of the husband was made in contemplation of marriage, it was made in consideration of forbearance to collect the notes, and that after his death a claim for their amount by his wife was properly allowed against his estate, and that his agreement was not within the Statute of Frauds, and could be proved without writing."

The case referred to is *Riley v. Riley*, 25 Conn. 153. Obviously in the case mentioned there was a present subject-matter, the debt evidenced by the note, and a present consideration for his promise, her forbearance to collect. Both existed independently of the promise of marriage. Such is not the case here.

The appellants cite one case which, so far as the oral antenuptial agreement related to personalty, sustains their view. But even in that case the agreement was held void since it also included prospective interests in real estate and impinged the law that such contracts can only be proved by written evidence. It was also held that the contract, being indivisible, was void *in toto*, which would also be true as applied to the facts here. *Rainbolt v. East*, 56 Ind. 538, 26 Am. Rep. 40. The Indiana court professedly based its decision as to the validity of the agreement touching personalty upon the Connecticut case of *Riley v. Riley*, *supra*. With deference, however, we suggest that the court overlooked the distinction between the two cases recognized in Browne on the Statute of Frauds and which we have attempted to point out.

The other cases cited by the appellants require scant notice. In *Sutherland v. Sutherland*, 68 Ky. 591, the statute of frauds is not discussed. The main question was that of a gift *causa mortis*.

In *Child v. Pearl*, 43 Vt. 224, the statute did not, like ours, avoid the contract, but merely required proof in writing. It was held not to apply to the agreement there in question because the wife's action was based not upon the oral antenuptial contract but upon her title to property that was always hers.

In *Edwards v. Martin*, 39 Ill. App. 145, the contract was in writing. The sole question related to the consideration.

In *Larson v. Johnson*, 78 Wis. 300, 47 N. W. 615, 23 Am. St. 404, the agreement was one for support and the consideration and subject-matter both existed independently of the marriage so that the contract could operate regardless of any marriage.

On the other hand, the respondent cites one case sustaining the view here expressed. In *Frazer v. Andrews*, 134 Iowa 621, 112 N. W. 92, 11 L. R. A. (N. S.) 593, a man and woman prior to their marriage made a parol agreement that the property of each should pass to their respective children on the death of either free from any claim by the other, the exact agreement claimed here. After marriage they entered into a written agreement of the same nature but in no manner referring to the oral antenuptial agreement. The written contract was held void under a statute declaring that, when property is owned by a husband or wife, the other has no interest therein which can be the subject of contract between them. The parol antenuptial agreement was held incapable of proof because made in consideration of marriage and such contracts under the Iowa statute are only susceptible of proof by written evidence.

We have found two other decisions clearly sustaining this view. In *Mallory's Adm'rs v. Mallory's Adm'r*, 92 Ky. 316, 17 S. W. 737, it was held that an antenuptial agreement that neither party shall have any interest in the property of the other by reason of the marriage, the exact agreement here, is a contract in consideration of marriage within the meaning of the statute of frauds and is not valid unless in writing. The court said:

"An antenuptial contract is one by which the parties agree to anticipate the general law controlling the marital relation and make a law in that regard to suit themselves, and consideration for the contract is the agreement to marry each other, which must be consummated, else the consideration fails. So the contract clearly comes within the provision, *supra*, requiring contracts in consideration of marriage to be in writing."

See, also, *White v. Bigelow*, 154 Mass. 593, 28 N. E. 904.

The clear object of the statute touching revocation is to prevent a capricious or inadvertent disherison of the surviving consort. The clear purpose of the statute of frauds is

to remove the temptation to perjury. Neither object would be promoted by a construction of either statute which would sustain the agreement here asserted.

Affirmed.

CROW, C. J., MOUNT, MAIN, and FULLERTON, JJ., concur.