[No. 3722.   Decided March 20, 1901.]

R. J. REEVES, *Executor, et al., Appellants,* v. SCHOOL DIS-
TRICT No. 59 OF LINCOLN COUNTY, WASHINGTON, *et al.,*
*Respondents.*

WILLS — CONSTRUCTION — DEATH OF DEVISEE.

Under Bal. Code, § 4608, which provides that "Every devise
of land in any will shall be construed to convey all the estate
of the devisor therein, unless it shall clearly appear by the will
that he intended to convey a less estate," a will must be con-
strued as passing an absolute fee-simple title to the devisee
named, instead of a life estate, when the will devises "the bal-
ance of my property, real and personal, to my cripple son,
Charles. . . . In case of his death it is my desire that my
sole property shall be applied to the school fund of Wilbur,"
since, in the absence of a clear intent to convey a less estate,
it must be construed that the testator had reference to the
possibility of the devisee's death before his own.

Appeal from Superior Court, Douglas County.—Hon.
CHARLES H. NEAL, Judge.   Reversed.

*Danson & Huneke,* for appellants.

*Myers & Warren, Mount & Merritt, N. T. Caton* and
*E. A. Hesseltine,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—This is a petition for distribution of the
estate of Samuel Wilbur Condit, deceased, under the pro-
visions of the following will:

"Condit's Ferry, Jan. 19th, 1895.   Know all men by
these presents, that I, Samuel Wilbur Condit, being in my
right mind, and knowing that life is uncertain, do make
my last will and testament on this day of our Lord, Jan-
uary the nineteenth, eighteen hundred and ninety-five.   It
is my desire to give my son George Condit my property
known as 'Condit's Ferry,' and to will and bequeath to

my son Willie Condit five dollars and fifty cents; the balance of my property, real and personal, to my cripple son, Charles, excepting my interest that myself and R. J. Reeves hold jointly on section eight.   I will my interest on the same to R. J. Reeves, and his heirs and assigns. I also appoint R. J. Reeves my administrator and executor, without bonds, stipulating that he see to my cripple son, Charles, and that he is well taken care of as long as he lives.   My property known as the 'Mitchell Place' I bequeath to R. J. Reeves, provided he pays the mortgage on the same.   It is my desire that R. J. Reeves rents my property, and applies the rents to the maintenance of my cripple son, Charles.   In case of his death, it is my desire that my sole property shall be applied to the school fund of Wilbur, and also that there be enough sold to pay all my just debts.   Hoping and trusting that R. J. Reeves will act in good faith, I revoke all former wills up to this date.   Witness my hand and seal.   Samuel Wilbur Condit.   Witnesses:   George G. James, Bert L. Woodin."

The testator left surviving him his three children, Willie, George, and Charles Condit.   Said Charles Condit, the cripple son to whom the main portion of the estate was devised, died on the 21st of May, 1899, under the age of 21 years, single and leaving no will.   The devisor, Samuel Wilbur Condit, died a few days after the execution of the will.   Willie Condit and George Condit were the issue of the marriage between deceased and Julia Condit, the marriage being entered into during the year 1875.   The deceased afterwards obtained a divorce from the said Julia Condit, and the property left by him was acquired by him subsequent to obtaining said divorce.   The petitioner Mary Ann is an Indian woman, and the mother of said Charles Condit, deceased, who was born as the result of unlawful cohabitation of said Samuel Wilbur Condit and said Mary Ann.   After hearing the evidence, the court made findings of fact and conclusions of law, and in accordance therewith entered a decree distributing the property specifically de-

vised to said Willie Condit, George Condit, and R. J. Reeves, respectively, and the residue of said estate to school district No. 59 of Lincoln county, Washington. The court construed the will to the effect that it was the intention of the devisor that, in case of the death of the devisor, the property which was devised to the said son Charles should be applied to the school fund of Wilbur, and the school fund of Wilbur was construed to be school district No. 59 of Lincoln county. The appellants' contention is that it was the intention of the devisor to give to Charles Condit an absolute title in fee simple of the property devised to him, and that the property was to be applied to the school fund only in case of the death of the said Charles Condit before the death of the devisor; that, the property having passed absolutely to Charles, his heirs,—in this case, Mary Ann,—would heir the property, instead of the school fund. It is also contended that there is nothing in the language used in the will to indicate that the devisor referred to school district No. 59 of Lincoln county. As we construe this will, it is not necessary to discuss this proposition. We think there was sufficient testimony to show that Mary Ann was the mother of Charles Condit, that Samuel Wilbur Condit was divorced from Julia Condit prior to the accumulation of the property in question, and that Mary Ann has sufficient standing in the court to have her rights litigated.

. This brings us to the main question in the case, viz. the construction of the will, and to the pertinent query whether it was the intention of the testator that his property should revert to the school district or to the school fund of Wilbur in case his son Charles died after the testator, or whether it was his intention to bestow upon him an absolute fee-simple title in the estate to vest in him and his heirs. We think the will must be construed in accordance with the

contention of the appellants.   Section 4608, Ballinger's Code, provides that

"Every devise of land in any will shall be construed to convey all the estate of the devisor therein which he could lawfully devise, unless it shall clearly appear by the will that he intended to convey a less estate."

Under this special provision of the statute the presumption must be that in this instance the absolute estate passed to Charles, unless it clearly appears from the will that such was not the intention of the testator.   The granting portion of the will is definite and certain, viz.   "the balance of my property, real and personal, to my cripple son, Charles."   This is an unequivocal, direct, and positive devise of an absolute estate, and is not to be restricted, under all authority, by ambiguous and uncertain provisions following in the will.   The provision that in case of his death it was the desire of the testator that the property should be applied to the school fund of Wilbur is a provision which in character is common in wills, and has received judicial construction to the effect that in such cases it was the intention of the testator to pass an absolute title to the devisee, and that the death referred to was that of the devisee before the death of the testator; that is to say, that, in this case, if Charles had died before the testator, the property, under the will already executed, would have passed to the school fund, but upon the death of the testator during the life of the devisee the will conveys an absolute title to the devisee.   In *Benson v. Corbin,* 145 N. Y. 351 (40 N. E. 11), where the testator devised his real estate to his children, conditioned that in case of the death of the children, leaving no issue, the property devised to them and their issue should pass to a certain missionary society, it was decided that the missionary society should take only in case of the death of the children in the testator's lifetime.   In that case the court quoted from *Vanderzee v.*

*Slingerland,* 103 N. Y. 55 (8 N. E. 247), the following
language from the opinion of the court:

"Where real estate is devised in terms denoting an in-
tention that the primary devisee shall take a fee on the
death of the testator, followed by a devise over in case of
his death without issue, it has I think been uniformly
held in England, and it is the rule supported by the pre-
ponderance of judicial authority in this country, that the
words refer to a death without issue in the lifetime of the
testator, and the primary devisee surviving the testator
takes an absolute estate in fee-simple;" citing *Washbon v.
Cope,* 144 N. Y. 297 (39 N. E. 388).

And the court, in the course of its opinion said:

"Where there is primarily a clear and certain devise
of a fee, about which the testamentary intention is
obvious and without ambiguity, the estate thus given will
not be cut down or lessened by subsequent words which
are ambiguous or of doubtful meaning. If a slight cir-
cumstance or a slender reason will in ordinary cases pre-
vent the application of the general rule, the circumstance
or the reason must be strong and decisive where the con-
struction collides with a plain devise in fee, and forces a
change of its terms by cutting it down to a lesser estate.
We do not easily trade a certainty for a doubt."

The same rule is announced in Beach, Wills, § 181, in
the following plain terms:

"It frequently happens that testators, after making a
devise or legacy in absolute terms, add thereto a provision
that, in the event of the legatee or devisee dying, the
property shall pass to certain other persons, or sink into
the residue of the estate. Such references to the death
of the legatee are generally construed to relate to his so
dying before the death of the testator, the intention of the
maker of the will being presumed to be only to provide
for the destination of the property in the event of lapse."

To the same effect, 3 Jarman, Wills, 606, where the
author in closing the argument on that proposition, says:

"Hence it has become an established rule that where the bequest is simply to A., and in case of his death, or if he die, to B., A., surviving the testator, takes absolutely."

See, also, as sustaining this construction, Schouler, Wills (2d ed.), § 565, and *Howard v. Carusi,* 109 U. S. 725 (3 Sup. Ct. 575), where the authorities are collated and the rule is announced as being almost universal. Also, *Moore v. Lyons,* 25 Wend. 119; *Mulvane v. Rude,* 146 Ind. 476 (45 N. E. 659); and the cases cited in the authorities above referred to. In fact, this proposition is not very strongly disputed by the respondents; but it is claimed that the rule is subject to another rule,—that the will of the testator is to be determined from the whole will, and that, in addition to that, circumstances occurring before his death may be introduced to explain or construe the language used in the will. This, no doubt, is also a well-established rule, but an examination of the record in this case and a consideration of the circumstances shown by the record are not convincing that it was not the intention of the devisor to grant an absolute title to his son Charles in the residue of his estate after making the exceptions which were made in the will. The language employed in the will is not the language of an ignorant man, but the forms of law are well preserved, technical language is used, and, in the absence of proof to the contrary, it must be presumed that the language used was used with reference to the construction that has universally been placed upon such language by courts in construing wills. The devise was specific, clear, and unambiguous. Under the provisions of our statute, it carried with it an absolute estate; and the ambiguous expressions afterwards used in the will, and the circumstances surrounding the execution of the will, are not sufficient to bring it within the other provision of the

statute, viz. "unless it shall clearly appear by the will that he intended to convey a less estate."

The judgment is reversed and remanded, with instructions to proceed in accordance with this opinion.

REAVIS, C. J., and FULLERTON and ANDERS, JJ., concur.