[No. 22217.   *En Banc.*   February 4, 1931.]

PAULINE E. HARGIS, *Appellant,* v. THOMAS F. HARGIS, *Defendant,* HARGIS BANK & TRUST COMPANY OF JACKSON *et al., Interveners-Respondents.*[1]

[1]Reported in 295 Pac. 742.

*Richards, Gilbert & Conklin,* for appellant.

*W. B. Clark, Joseph C. Cheney, O. R. Schuman, Williamson & Laberge, Cheney & Hutcheson,* and *Udell & Mitchell,* for respondents.

## On Rehearing.

Holcomb, J.—Upon a rehearing *En Banc* being granted in this case, which was decided and reported in *Hargis v. Hargis,* 157 Wash. 251, 288 Pac. 664, upon the submission of the case on rehearing in the oral argument and by printed statement, appellant confined her claim for a reversal strictly as respecting the decision in favor of the Hargis Bank & Trust Company as intervener, waiving all questions as to the adjudication regarding all other interveners.

A further intensive study has been given the entire record in this cause upon this question.

Appellant insists that, the community or separate status of property being fixed at the time of its acquisition (*United States Fidelity & Guaranty Co. v. Lee,* 58 Wash. 16, 107 Pac. 870, *Ketterhagen v. Meister,* 78 Wash. 112, 134 Pac. 673, *In re Parker's Estate,* 153 Wash. 392, 279 Pac. 599), it is established that the real estate called the Olsen ranch is her separate estate, according to the rule consistently followed by this court. The admitted rule is, as stated in the former opinion, that, when a spouse contends that property, presumptively community, is, in fact, separate, such contention being urged for the purpose of defeating claims of *bona fide* creditors of the community, the evidence must be clear and convincing in support of such contention. It is urged, however, that, under our decisions, such as *United States Fidelity & Guaranty Co. v. Lee, supra,* when property is acquired during marriage, the test of its separate or community character

is whether it was acquired by community funds, or community credit, or wholly by separate funds or separate credit; and that it was here shown by clear and convincing evidence that none but separate funds and separate credit, to the extent of $12,300, were used to procure that ranch.

Some details concerning the transactions involving appellant, her husband, Thomas F. Hargis, and the intervener Hargis Bank & Trust Company, not mentioned in the former opinion, should be now noticed.

The controversy revolves chiefly about the ownership of notes, and a mortgage securing the same, of the value of nearly $14,000. These belonged originally to the mother of Thomas F., Joanna E. Hargis, and had been assigned by her to him. They were given Joanna E. Hargis, who was the wife of A. H. Hargis, the father of Thomas and president of the Hargis Bank & Trust Company of Jackson, Kentucky, for part of the purchase price of real estate in Yakima county, Washington. They were long-time paper, given by one Ed Freeman and wife, and are habitually designated in the record as "the Freeman notes and mortgage."

When appellant and her husband purchased a ranch known as the Simonds ranch for $26,700, it was paid for as follows: Appellant conveyed the house known as the Eleventh avenue property at $8,000. Thomas assigned the Freeman notes and mortgages of the value of nearly $14,000, and the balance was borrowed from a savings and loan association.

After appellant and her husband had owned the Simonds property about six months, Miss Simonds desired to repurchase it, and Thomas desired to sell, because he could realize a profit of $10,000. Appellant desired to keep the place, because it was satisfactory to her in all respects, and she distrusted the ability of

Thomas to care for the money, and, for a time, she refused to sign the deed. Thomas promised appellant that, if she would sign the deed, the house known as the Eleventh avenue house would be reconveyed to her, and that he would assign over to her the Freeman notes and mortgage. To this, appellant finally agreed. Thomas consulted two different attorneys as to the status of the Freeman notes and mortgage, if the same should be reassigned from Almira Simonds directly to appellant and was advised that if he did not reassign them to her, it would make no difference as to the status as community property.

In September, 1926, the deal was consummated. The Freeman notes and the mortgage were assigned directly from Almira Simonds to appellant. They were, however, delivered to Thomas, who placed them in a safety deposit vault to which both parties had access. The Eleventh avenue property was, on September 28, 1926, conveyed by Almira Simonds to both appellant and Thomas F. Hargis. At about the same time, Thomas employed Attorney O. R. Schumann to prepare a deed to the Eleventh avenue property, conveying all the interest of Thomas to appellant. That deed was executed and delivered to appellant, but never recorded by her. They then purchased what is known in the record as the Olsen ranch, for a consideration of $30,500. The transactions relating to that purchase, in approximately chronological order, were these:

On May 10, 1927, Thomas decided to buy that ranch, at which time he and appellant had $300 in their joint account. On May 14, 1927, Thomas signed the earnest-money agreement for its purchase and paid $1,000 down. On May 16, the property was deeded to Thomas F. Hargis, and the deed recorded on the same day. On the same date, Thomas personally assumed and agreed to pay $24,674 in mortgages and $311.18 in

taxes. The deed was made subject to the mortgages, and subject to a lease of the land for one year. On the same day, Thomas personally assumed the lease and chattel mortgages on the growing crops. On May 16, all checks were drawn which were to pay the balance to Olsen, over and above the encumbrances, which were deposited in escrow with Attorney O. R. Schumann. On May 16, also, Judge Eversole, father of appellant, who had been requested by Thomas to secure the money with which to pay the balance over and above encumbrances on the Olsen ranch, left Yakima for Jackson, Kentucky, to obtain the money. He took with him the Freeman notes assigned by both appellant and Thomas.

On May 20, 1927, the net proceeds of the Freeman notes and mortgage, amounting to $12,300, were deposited in the bank of the Hargis Bank & Trust Company of Jackson, Kentucky, and the collection item was deposited in the bank with which appellant and Thomas did business, the next day, and deposited in the only account to which appellant had access, their joint banking account. The money obtained from this source was not available for use by any party until June 7. On May 23, $500, which had been loaned by the Pacific Fruit & Produce Company to Thomas, had been paid to Olsen. On May 24, $3,584.87 was paid to Olsen from money borrowed by Thomas from the Pacific Fruit & Produce Company, and $200 obtained by him from another source. On June 4, $2,442.79 had been paid on one of the mortgages assumed by Thomas, the money being advanced by the First National Bank of Yakima. On June 3, 1927, the taxes assumed by Thomas had been paid.

It is an established fact that Thomas assumed and agreed to pay the mortgages and taxes aggregating $24,985.18, as part of the purchase price. Such as-

sumption of an encumbrance may be created and proven orally, and be enforced independently, although not included in the deed. *Ordway v. Downey,* 18 Wash. 412, 51 Pac. 1047, 52 Pac. 228, 63 Am. St. 892.

To that extent, therefore, the credit of the community was undoubtedly pledged; but those obligations were all discharged by the community, and Thomas had agreed that the Freeman notes and mortgage should be the separate property of appellant, as the court found, although the court also found that Thomas never intended to consummate his promise to appellant, but intended merely to overreach her. The court did decree, however, that all the property involved in this action, as between appellant and Thomas F. Hargis, is the separate property of appellant. After the agreement made between appellant and Thomas, the court could do no less in her behalf.

Appellant admits that, to the extent of $1,500, which was borrowed from the Pacific Fruit & Produce Company, the property was community property, as was heretofore decided, but insists that as to the $12,300, the net sum procured by appellant and her father from the Hargis Bank & Trust Company, the Olsen ranch should be decreed to be her separate property, as against the Hargis Bank & Trust Company, intervener herein.

Respondent-intervener complains bitterly of what it contends was sharp practice on the part of appellant, in that Judge Eversole, her father, represented her in the taking of depositions in its behalf, by stipulation, in Kentucky, of A. H. Hargis, in not cross-examining him, when taking his deposition, as to any notice or knowledge he had concerning the disposition of the Freeman notes and mortgage.

Judge Eversole testified in the trial of this case that he informed A. H. Hargis that the Freeman notes

and mortgage, which he used as collateral to secure a loan of $13,000 which he made (the Hargis Bank & Trust Company refusing to loan the money desired merely on the collateral of the Freeman notes and mortgage), had been assigned to appellant, the daughter of Judge Eversole, and that the Olsen ranch was to be purchased as and for the separate property of appellant. This evidence of Judge Eversole was given long after the transaction in Kentucky, and after the deposition of A. H. Hargis had been taken.

But the record shows that A. H. Hargis and his wife had dealt in real estate in Washington, and must have been familiar with the property laws of Washington; familiar with the community property law in vogue here; that he had conveyed his interest in real estate in Yakima county, Washington, to his then wife Joanna E. Hargis, so that she could own it wholly as her separate property. He was also undoubtedly familiar with the history of the Freeman notes and mortgage. It can hardly be doubted that, when they were presented to him for security for a loan, even though they were assigned by both appellant and Thomas, he knew they had been the sole property of Thomas by assignment from his mother, and must have been advised that, the mortgage having been assigned to appellant, it was the intention of Thomas to create in appellant a separate property and right in and to the notes and the mortgage. The assignment of the mortgage had been made by Almira Simonds directly to appellant, at the direction of Thomas. The assignment had also been recorded in Yakima county on October 4, 1926, which was notice to all the world.

Our conclusion is that, under our decisions in *In re Finn's Estate*, 106 Wash. 137, 179 Pac. 103, and *In re Carmack's Estate*, 133 Wash. 374, 233 Pac. 942, the funds used in the purchase of the Olsen ranch, to the

extent of $12,300, were the separate funds of appellant, of which the Hargis Bank & Trust Company had notice, and to that extent the Olsen ranch became her separate estate.

As to that portion of the decree of the trial court, the former opinion of this court, *supra,* is in error, and is overruled, and the judgment of the trial court, to that extent, modified and reversed.

FULLERTON, MAIN, MITCHELL, and MILLARD, JJ., concur.

BEALS, J. (dissenting)—When Mr. and Mrs. Hargis purchased the Simonds ranch, that tract became their community property. When Miss Simonds repurchased the ranch, and, as part of the consideration, assigned to appellant Pauline E. Hargis the Freeman notes and mortgage, the same became *prima facie,* at least, and, I believe, actually, the community property of the parties. It is true that Thomas F. Hargis promised appellant that he would assign the notes and mortgage to her, but he never did so, and undoubtedly never intended to do so. In my opinion, the notes and mortgage were, in fact, the community property of the parties, although it is possible that a court of equity might have compelled Thomas to fulfill his promise to appellant. This, however, did not change the situation as to the actual ownership of the notes and mortgage, which remained in the community. The fact that one party may have an equitable right to a conveyance of property from another, and may even, as between the parties, be regarded as the equitable owner, does not, under such circumstances as here appear, affect the rights of third parties who have no actual notice of the situation.

When in May, 1927, Mr. Hargis undertook to buy the Olsen property for over $25,000, he turned over

to appellant's father, Judge Eversole, the Freeman notes and mortgage, assigned both by himself and by appellant. Respondent Hargis Bank & Trust Company cashed this paper, and the net proceeds thereof, amounting to $12,300, were deposited in the First National Bank of Yakima to the joint account of Mr. and Mrs. Hargis. This money was appropriated to the payment of an overdraft and some short time loans, which had been made by Mr. Hargis for the purpose of raising money to purchase the Olsen ranch. Some portion of the money was also devoted to the personal expenses of Mr. and Mrs. Hargis. As stated in the majority opinion, the credit of the community was undoubtedly pledged for the payment of mortgages and taxes against the Olsen ranch in the sum of almost $25,000.

As I understand the record, the proceeds of the Freeman notes and mortgage were used, not to pay directly obligations which had been assumed by the community in connection with the purchase of the Olsen ranch, but were used, in part at least, to repay money borrowed by the community, which original loans had been made for the purpose of raising funds with which to pay obligations assumed in connection with the purchase of the property. I find no warrant in the testimony for the assumption, indulged in by the majority, that Mr. A. H. Hargis, the president of respondent Hargis Bank & Trust Company, when Judge Eversole presented to him the Freeman notes and mortgage, assigned by both Thomas F. and Pauline E. Hargis, must have been advised that it had been the intention of the son Thomas "to create in appellant a separate property and right in and to the notes and the mortgage."

While one cannot but sympathize deeply with appellant, who was shamefully treated by her husband, I

cannot find, in the record, evidence which convinces me that, as to respondent Hargis Bank & Trust Company, appellant is entitled to a decree that the Olsen ranch is her separate property to the extent of $12,300, or any extent whatever. Mr. and Mrs. Hargis each owned considerable separate property. They commingled this property, and, in my opinion, it must be held that, as to respondent Hargis Bank & Trust Company, as well as to the other respondents, the Olsen ranch became and remained the community property of Mr. and Mrs. Hargis, and that the judgment appealed from was correct and should be affirmed.

TOLMAN, C. J., and PARKER, J., concur with BEALS, J.