[No. 23410.   Department Two.   January 13, 1932.]

*In the Matter of the Estate of* HENRY H. GULSTINE, *Deceased.*[1]

¹Reported in 6 P. (2d) 628.

*Wm. W. Montgomery* and *Arthur E. Griffin,* for appellants.

*Wingate & Suffel,* for respondents.

BEALS, J.—During the year 1910, Henry H. Gulstine with his family removed from South Dakota to the state of Washington, establishing his residence in the Yakima valley, whence he later moved to Seattle. Mr. Gulstine resided in the state of Washington until his death, which occurred October 18, 1927. A will executed by Mr. Gulstine October 11, 1927, was, in due time, admitted to probate, and from a decree of distribution under this will certain of his children appeal.

Mr. Gulstine, during his long residence in the state of South Dakota, prospered exceedingly as a retail dealer in farm machinery and as a farmer, and at the time he established his residence in the state of Washington, it is probable that his net worth approximated seventy-five thousand dollars. He was twice married. By his first wife, who died during the year 1896, he had six children—Berna C., Josephine A., Herman P., Henrietta M., May Pearl, and Edna M. Four years after the death of his first wife, Mr. Gulstine married as his second wife, Lydia C., who survived him. By his second wife, Mr. Gulstine had four children—Morris V., Henry, Eunice Marjorie, and Leland S., two of the

children having been born after the family removed to this state.

By his will, the testator appointed his daughter Henrietta and his son Morris executrix and executor, respectively, of his will, and letters testamentary thereon were regularly issued. At the time of his death, Mr. Gulstine owned property consisting of a fruit ranch in Yakima county, and approximately six thousand dollars in cash.

October 10, 1928, Mr. Gulstine's widow, Lydia C., executed her will which, after her death, which occurred November 27, 1928, was admitted to probate, and which was thereafter the subject of litigation. *In re Gulstine's Estate*, 154 Wash. 675, 282 Pac. 920.

By his will, Mr. Gulstine bequeathed to his daughters Berna and Josephine two thousand dollars each, the proceeds of policies of insurance upon his life. To his daughter Henrietta, he bequeathed two thousand dollars, in addition to the family home in Seattle, which had theretofore been conveyed to her by deed from Mr. and Mrs. Gulstine. The will contains the following provision for Morris Gulstine:

"(c) My son, Morris Vernon Gulstine, having assisted me in developing our fruit ranch near Zillah, county of Yakima, Washington, and bringing it to its present efficiency and value, I deem it just and equitable, that he should have for his share an undivided one-fourth interest in said fruit ranch, and I hereby devise and bequeath unto him an undivided one-fourth interest in said fruit ranch as his share in my estate."

The remainder of the testator's estate, save five dollars bequeathed to his son Herman, was divided equally between the three remaining daughters, Edna, May and Eunice Marjorie, the two sons, Henry and Leland, and the surviving widow, Lydia C., one-sixth each.

The will contained the following clause:

"(i) In the event of the death of any of the beneficiaries named in this will, without issue, and leaving no spouse surviving, his or her share shall be divided equally between the beneficiaries named in paragraph '(e)' of this will."

Prior to the distribution of his father's estate, Morris Gulstine died, leaving surviving him neither child nor widow.

It clearly appears from the evidence that the second Mrs. Gulstine brought no property into the family at the time of her marriage or later, and that, by the laws of South Dakota, Mr. Gulstine's accumulations acquired in that state were his separate property. Under the decisions of this court, Mr. Gulstine's property brought by him into the state of Washington being, under the law of the place where the same was acquired, his separate estate, would remain his separate property, as would the proceeds thereof, as long as the same could be directly traced. *Brookman v. Durkee,* 46 Wash. 578, 90 Pac. 914, 123 Am. St. 944, 12 L. R. A. (N. S.) 921; *Meyers v. Albert,* 76 Wash. 218, 135 Pac. 1003; *Myers v. Vayette,* 146 Wash. 1, 261 Pac. 647.

Mr. Gulstine purchased the Yakima county ranch after his arrival in this state, paying therefor eleven thousand dollars, three thousand dollars in cash and eight thousand dollars by a note secured by a mortgage on the land, both signed by himself and his wife. The trial court found that the three thousand dollars paid on account of the purchase price of the ranch was Mr. Gulstine's separate property, with which finding we are in entire accord. The property then became three-elevenths the separate estate of Mr. Gulstine, and eight-elevenths the community property of himself and his wife. *Zintheo v. Goodrich Rubber Co.,* 136 Wash. 196, 239 Pac. 391.

During his residence in the state of Washington, Mr.

Gulstine purchased other real estate, another ranch in Yakima county, which was later sold at a considerable loss, and property in Seattle, which Mr. Gulstine improved extensively and thereafter sold for a large sum. Mr. and Mrs. Gulstine also purchased a home in the city of Seattle, which was by them conveyed to Mr. Gulstine's daughter Henrietta.

The trial court found that all of the personal property left by Mr. Gulstine was community property, there being a net balance thereof for distribution a sum in excess of fifty-one hundred dollars. The court found that three thousand dollars of the purchase price of the ranch was paid out of Mr. Gulstine's separate estate, and that his separate estate was entitled to recognition to that extent. The court found that the gross income from the operation of the ranch during the period of administration of the estate amounted to almost twenty thousand dollars, of which there remained a net balance for distribution in excess of fifteen thousand dollars, which sum the court found had "been distributed and expended by the executrix and executor," in what manner does not clearly appear. Morris Gulstine died April 28, 1931, leaving a will which, at the time of the distribution of his father's estate, had been admitted to probate. The court distributed the Henry H. Gulstine estate as follows: 7/120 to Edna; 7/120 to May; 7/120 to Eunice Marjorie; 7/120 to Henry; 7/120 to Leland; 55/120 to the estate of Lydia C.; and 30/120 to the estate of Morris.

The trial court made no allowances to the executrix and executor for their services, and charged Henrietta, as executrix, with the sum of $838.70, being an overdraft shown against her on the accounts of the estate. The decree of distribution contained other provisions, but the foregoing statement is sufficient to explain the questions before us for determination.

From the decree as entered, Henrietta, personally and as executrix, and her sisters Edna and May (the latter appearing by guardian, she being incompetent) have appealed to this court.

Appellants assign error upon the finding of the trial court that all of the personal property of the estate was the community property of Mr. and Mrs. Gulstine; upon the distribution of the real estate; upon the finding concerning the net balance which the court held accrued from the operation of the ranch; upon the distribution as made to appellants Edna and May; upon the amount distributed to the Lydia C. Gulstine estate and to the Morris Gulstine estate; and upon the failure of the court to allow Henrietta any compensation for her services as executrix and in charging her with the amount which the court found due from her to the estate, or any amount whatsoever.

Being clearly of the opinion that any money brought by Mr. Gulstine to the state of Washington from the state of South Dakota was his separate estate, we must, nevertheless, hold that, because of the method followed by Mr. Gulstine in investing, handling and expending this money, its character as separate property became changed, and that, at the time of Mr. Gulstine's death, none of his property constituted his separate estate, save and except an undivided three-elevenths interest in the fruit ranch. The title to this undivided interest in the ranch property vested, at the time of the purchase thereof, in Mr. Gulstine as his separate estate. It therefore remained his separate property, as, under the evidence, it must be held that the income therefrom was sufficient to carry the same.

The title to real estate becomes fixed at the time the same vests, and remains either separate or community, unless changed in some manner recognized by law.

*Heintz v. Brown,* 46 Wash. 387, 90 Pac. 211, 123 Am. St. 937; *Katterhagen v. Meister,* 75 Wash. 112, 134 Pac. 673; *In re Finn's Estate,* 106 Wash. 137, 179 Pac. 103; *Jacobs v. Hoitt,* 119 Wash. 283, 205 Pac. 414; *Zintheo v. Goodrich Rubber Co.,* 136 Wash. 196, 239 Pac. 391; *Walker v. Fowler,* 155 Wash. 631, 285 Pac. 649.

█ Appellants argue that their father's separate estate should be given credit against the community estate for large sums of money which appellants contend their father brought to the state of Washington and expended in the improvement of the ranch property. Careful examination of the record convinces us that we cannot hold in accordance with appellants' contention. While it is doubtless true that Mr. Gulstine brought into the state of Washington considerable sums of money, the record before us does not contain evidence which would support a holding that Mr. Gulstine's separate estate is entitled to credit against the community estate of himself and Lydia, his wife, for any particular amount. The parties lived many years in the state of Washington, during which period Mr. Gulstine engaged in the improvement and operation of two ranch properties and in the construction of a large and costly building in the city of Seattle. We are unable to find that Mr. Gulstine made any effort to keep any of his separate property separate and distinct from the community estate of himself and his wife, and, in view of the statute to the effect that when separate and community estates are intermingled the whole becomes community, we are unable to agree in this particular with appellants' contention. *Jacobs v. Hoitt, supra.*

The evidence as to what money Mr. Gulstine brought from South Dakota is extremely unsatisfactory, the record containing no testimony as to exactly, or even approximately, what amount he did bring into the

state of Washington. He brought his money into this state from time to time, over many years, as he needed it or as he could realize on his investments, former business or accounts receivable. To some of his friends in this state, the testator complained that his investments here had been unsatisfactory, and that he had lost money, but this affords no sufficient basis for a holding that Mr. Gulstine acquired no community property in the state of Washington, or that all or any of his estate, save as hereinabove indicated, was his separate property.

Appellants rely upon the opinion of this court in *In re Carmack's Estate,* 133 Wash. 374, 233 Pac. 942, in which this court held that the improvement, by the community at large expense, of the wife's separate real property entitled the community to an interest in the property which the law would protect. The case cited is not controlling upon the questions here presented, because it clearly appeared that the wife owned the bare unimproved real estate and that all improvements placed thereon were paid for by the community, the value of the improvements being easily ascertainable.

The same may be said of the language in the opinion in the case of *Rawleigh Co. v. McLeod,* 151 Wash. 221, 275 Pac. 700, 64 A. L. R. 238, in which the prior opinion in the *Carmack* case was explained, and the doctrine that the character of the property as separate or community was fixed at the time of the vesting of the title thereto, was reaffirmed.

Appellants argue that there was no commingling of separate and community funds of Mr. and Mrs. Gulstine, for the reason that they never had any money which should be classified as community property. Upon the record before us, it cannot be held that Mr. Gulstine's long residence in the state of Washington

resulted in the acquisition of no community funds. During the period of his residence here, Mr. Gulstine was actively engaged in managing and improving his different properties, and we cannot hold either that he acquired no community funds, or that, if he did acquire any such, he expended all thereof in the support, education and maintenance of his family.

Over the dissent of the writer of this opinion, this court, in the case of *Walker v. Fowler, supra,* refused to allow one of the spouses credit by way of an equitable lien upon a tract of real estate for money, the separate property of such spouse, paid on account of a community obligation constituting a lien upon the land. In the case cited, it was held that the real property was owned by the community and the separate estate of the wife, in fixed proportions, as determined by the acts of the parties at the time of the acquisition of the title, but the court refused to allow the separate estate of the wife any further equitable right, although it clearly appeared that a certain specific amount was paid out of her separate funds on account of the community indebtedness evidenced by a community note secured by a community mortgage on the land.

In the case at bar, the burden rests upon appellants to establish any interest which their father's separate estate may own in the gross estate which is being administered by the court pursuant to his last will and testament. We cannot hold that, from the record before us, Mr. Gulstine's separate estate should be held to own more than an undivided three-elevenths interest in the ranch, together with that proportion of the net proceeds of the property.

Appellants next contend that the trial court erred in distributing any portion of the estate to the estate of Morris Gulstine, deceased, and cite paragraph (i) of Mr. Gulstine's will, above quoted. In this

connection, we are clearly of the opinion that the trial court did not err in its ruling upon this question. We hold that Morris Gulstine, having survived his father, took, under the latter's will, an indefeasible title to that portion of the estate devised to him. The clause of the will above quoted, relied upon by appellants, is limited in its effect to that portion of the testator's estate devised by his will to one who might die prior to the death of the testator. This is in accord with the decision of this court in the case of *Reeves v. School District No. 59,* 24 Wash. 282, 64 Pac. 752, which case controls the question now under discussion.

In the decree appealed from, the trial court found that the ranch was "both community and separate property." Appellants complain that the court did not carry this finding over into the distribution of the funds constituting the net income from the land. Respondents, in their brief, do not dispute this contention on the part of appellants. We hold that the title to the ranch is three-elevenths the separate estate of the deceased, and eight-elevenths community estate, and that the separate interest should be carried over into the distribution of the accrued net profits which have arisen from the property.

We are also of the opinion that the trial court erred in failing to allow appellant Henrietta Gulstine compensation for her services as executrix under her father's will.

The decree of distribution is accordingly reversed, with instructions to further proceed in accordance with this opinion.

TOLMAN, C. J., MAIN, HOLCOMB, and MILLARD, JJ., concur.