[No. 24181. Department One. March 7, 1933.]

GERTRUDE C. FLANAGAN, *Respondent*, v. LULU FARRINGTON, *Appellant*.[1]

*W. U. Park,* for appellant.

*William A. Herren* and *Ned Roney,* for respondent.

HOLCOMB, J.—Respondent brought this action to quiet title to specifically described real estate against the lien of a judgment obtained in a certain cause entitled Farrington v. Flanagan, in King county, Washington. After issue was joined, the case was tried to the court, without a jury, resulting in a decree in favor of respondent as prayed.

Appellant introduced no testimony, and there is no conflict in the evidence. The sole issue involved is whether the real estate in question is the separate estate of respondent or community estate of herself and her husband, Charles G. Flanagan.

In 1891, respondent inherited $2,300 in money from the estate of her father, E. O. Clemans, in Iowa. She left that money in the hands of her brother Hugh, a practicing attorney at Manchester, Iowa, who looked

[1]Reported in 19 P. (2d) 660.

after and took care of most of her separate property thenceforth. Respondent did not allow her husband to handle any of her separate moneys or property. Subsequent to 1891, respondent had received an interest in a farm in Delaware county, Iowa, which she valued at ten thousand dollars. In 1910, she received money from her brother and purchased a half acre of land in Whatcom county, this state, which later she traded for a house and lot in Bellingham, Washington. In addition to the half acre exchanged for that property, she paid nine hundred dollars which she obtained from her brother Hugh in 1918. She also purchased a mortgage on property in Bellingham in the sum of $735 with money obtained from her brother Hugh which had come from her father's estate or from an estate in Ohio. The house and lot in Bellingham and the mortgage of $735 were subsequently sold by respondent, who received therefor the total sum of $2,335.

In 1912, respondent received from another estate an inheritance of approximately one thousand five hundred dollars, with which she purchased twenty acres of land in Whatcom county, and received other moneys from the estate of her mother and from the estate of a Mr. Lane, most of which she left with her brother for safe keeping and investment purposes. In 1921, she received one thousand two hundred dollars from an estate, which she sent to her brother for safe keeping. She had previously received three hundred dollars as rental of her farm in Iowa. She subsequently sold the twenty acres of land in Whatcom county and paid the balance of one thousand five hundred dollars due on the mortgage of the property, which had been renewed by her at a bank in Iowa.

Prior to May, 1919, one Moses was the owner of the property in question. He had sold the same by real estate contract to one Fowler, who had assigned his

interest to one Healy. On about May 15, 1919, Charles G. Flanagan, husband of respondent, agreed to purchase the Moses property for $8,300, to be paid as follows: A contract for the equity in the real estate contract assigned by Healy was given by Healy to Flanagan, wherein Flanagan agreed to pay and did pay one thousand five hundred dollars on the execution and delivery of the contract, and agreed to pay five hundred dollars on August 15, 1919; five hundred dollars on November 15, 1919; and the balance on February 15, 1920; in addition to those payments, he agreed to assume the payments on the original real estate contract given by Moses to Fowler, and assumed and agreed to pay the mortgage in the sum of three thousand dollars then on the property. Healy agreed, upon compliance with all the terms of the contract, to assign to Charles G. Flanagan and respondent the Moses contract. Charles G. Flanagan made the payment of the Healy contract due August 15, 1919, but failed to make any other payments thereon, and paid only about one thousand dollars on the Moses contract, because of financial difficulties he met in the latter part of 1919.

In the fall of 1920, the Flanagans were still financially embarrassed, owed a balance on the Healy contract of about seven hundred dollars, and were behind several months on the Moses contract. On about June 9, 1920, a notice of forfeiture was served upon the Flanagans, notifying them unless they paid the Healy contract it would be forfeited. They were unable to raise the money, and Charles G. Flanagan borrowed seven hundred dollars from Hugh Clemans, a brother of Mrs. Flanagan, to pay and did pay the balance due on the Healy contract, and received an assignment of the Moses contract. Hugh Clemans and Carl Clemans, another brother of respondent, were partners in a business at Alpine, Washington, although Hugh resided in

Manchester, Iowa. The money was advanced by Carl and charged to the account of his brother in the mill business. Up to that time, Charles G. Flanagan had paid approximately $3,500 on the purchase price of this property, including the amounts paid on the Healy and the Moses contracts.

Because of the delinquent payments on his contract, Moses made demand upon the Flanagans to bring them up to date, which they, because of their financial condition, were unable to do and were unable to continue the purchase of the property or to pay the taxes thereon, which had also become delinquent. In consideration of the seven hundred dollars advanced by Hugh Clemans, they assigned all their right, title and interest in the Moses contract for the purchase of the property to Hugh Clemans, who agreed to pay the balance due on that contract and also assumed and agreed to pay the mortgage and delinquent taxes.

Hugh Clemans subsequently paid the balance due on the Moses contract and received a deed. He also paid delinquent taxes and current taxes for several years and one thousand five hundred dollars on the mortgage then on that property, and renewed the balance of the mortgage. In making these payments, he paid the approximate sum of five thousand dollars.

Respondent repaid several sums to her brother Hugh, but before the final payments were made, he died. In 1925, upon petition in his estate in Iowa, she received a deed to the property in question from Bertha P. Clemans, executrix of the estate of Hugh Clemans.

An examination of the testimony of respondent on direct and cross-examination discloses that her testimony was positive and convincing. Much of the proofs of the source of the funds is from Iowa probate records.

The trial court said, in one of his decisions, upon denying a motion for a new trial, that, if the Flanagans had acquired an interest in the executory contract to purchase the real property in question as a community, that interest had been conveyed to Hugh Clemans; that any financial interest that the community may have had, was, according to the evidence, transferred by the community to him in consideration of the sums which had theretofore been advanced by him out of respondent's separate funds; that, according to the evidence, the community received from respondent's separate estate sums in excess of the amounts invested by the community in the executory contract.

Since there was no contradiction of the testimony of respondent and her testimony was not in any way impeached, it was sufficient to overcome the presumption that the property involved was community property. *Carlson v. Rea,* 94 Wash. 218, 161 Pac. 1195.

The origin of the funds with which the real property in question was purchased was convincingly traced, and the evidence is more than abundant to overcome the presumption that it was community property. *Merrick v. Appenzeller,* 115 Wash. 181, 196 Pac. 629.

Only one of our cases is cited by appellant, *Allen v. Kane,* 79 Wash. 248, 140 Pac. 534, which was an action in the nature of a creditor's bill to subject property to a judgment. The facts in that case were in no wise parallel with the facts in this case, and entirely different principles of law govern it.

The decree of the trial court is right, and is affirmed.

BEALS, C. J., PARKER, MITCHELL, and MILLARD, JJ., concur.