## WOODS v. NAIMY.

### No. 7253.

Circuit Court of Appeals, Ninth Circuit. March 16, 1934.

John C. Hurspool, of Walla Walla, Wash., for appellant.

Grant S. Bond, of Walla Walla, Wash., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

Anson B. Woods, individually, and the community consisting of Anson B. Woods and Eliza A. Woods, husband and wife, were adjudged bankrupt. In the schedules filed in the bankruptcy proceedings the real estate in question was listed as an asset with the notation that it was claimed by Eliza A. Woods as her separate property. In view of this claim, a citation was issued by the referee in bankruptcy directed to Eliza A. Woods to appear and offer evidence on the question of the community or separate character of said real estate. Pleadings were filed by Eliza A. Woods and by the trustee in bankruptcy, and thereafter a hearing was had at which hearing evidence on the question was introduced. The referee in bankruptcy made his findings of fact and conclusions of law to the effect that the real estate in question is community property and subject to administration by the trustee as assets of the bankrupt estate, and made his order in accordance therewith. On petition of Eliza A. Woods, appellant herein, this order was reviewed by the District Court of the United States for the Eastern District of Washington, and the findings and order of the referee in bankruptcy were approved. From the order of the District Court approving the action of the referee, the present appeal is taken.

The real property involved in this appeal

consists of 160 acres described as follows: West half of the west half of section 13, township 8 N., R. 36 E. W. M., situate in Walla Walla county, state of Washington. The findings of the referee concerning the purchase of this land, which were approved by the District Court, are as follows:

"3. In September 1925 negotiations between Anson B. Woods and wife and one Bailey culminated in the purchase of the land in question at a price of $80.00 per acre, or $12,800 cash; at the time an earnest money deposit of $500.00 was paid down by said Woods, and when title was arranged the purchase was completed, and the purchase money paid over to the vendor.

"3. The $500.00 down payment was borrowed by Anson B. Woods from the Peoples State Bank on his note, of which he and his wife had full knowledge, the remainder of the purchase price was paid by money received on a note and mortgage executed by Anson B. Woods and wife to the Northwestern Mutual Life Insurance Company for $6400.00 and $5900.00 borrowed by them on the note of Anson B. Woods from the Peoples State Bank.

"4. The deed for this property was taken in the name of Anson B. Woods and Eliza A. Woods, his wife, and was promptly placed of record. About a year after the deed was thus taken in the names of the said grantees, Eliza A. Woods was fully informed of the status of the record title for this property, yet nothing concerning the same was ever done by either of them.

"5. Of the $6400.00 borrowed by Anson B. Woods from the bank for payment on this land, there was later applied the sum of $1500.00 and $3000.00 which was the separate property of Eliza A. Woods, by Eliza A. Woods endorsing and delivering the checks therefor to Anson B. Woods who paid them into the bank for credit on the note; evidently the remainder of the loan was repaid from the avails of a $4000.00 Hungate obligation which the referee finds was community funds.

"6. Since the completed purchase of the property as aforesaid a portion of the income has been applied to the payment of taxes, principal and interest on the mortgage, but not all of the income has been thus applied, until the principal yet due thereon is $3500.

"7. With the full knowledge, approval and consent of Eliza A. Woods, Anson B. Woods took the wheat receipts for the crops of the property in his own name; he sold the wheat, deposited the avails thereof in his own individual checking account in the Peoples State Bank, Walla Walla, Washington, and did not counsel her as to the sale and disposition of crops; she did not take any part in the management of the business as to details of collecting and applying income from the property, but left all thereof to Anson B. Woods.

"8. There has never been any conveyance by Anson B. Woods to Eliza A. Woods of his community or other interest in this land. * * * "

■ The main contention of appellant is that the evidence establishes the fact that there never was any community property or community credit attributable to the marital community. This contention is based upon the fact that her husband has never been engaged in business since they took up residence in Washington in 1910, but has been engaged solely in looking after their separate property acquired in Oregon and the rents, issues, and profits thereof, which remained separate property. It is argued, therefore, that all property acquired by either of them since they have resided in Washington must of necessity have been acquired with separate funds or credit. This contention is not tenable upon the record in this case. The Supreme Court of Washington refused to accept a similar contention urged upon it in the case of In re Gulstine's Estate, 166 Wash. 325, 6 P.(2d) 628, 630. The fact that the marital community has incurred the community debts listed in the schedules shows conclusively the existence of community business and community credit.

■ The status of real property is governed by the law of the state in which the property is situated. Under the law of the state of Washington, property owned by either spouse before marriage or acquired after marriage by gift, bequest, devise, or descent, together with the rents, issues, and profits thereof, is the separate property of that spouse. All other property acquired by either husband or wife or both after marriage is community property. See sections 6890–6892, Rem. Comp. Stat. Wash. Where property is acquired after marriage by either husband or wife or both, it is presumed to be community property. When a spouse contends that property, presumptively community, is in fact separate, such contention being urged for the purpose of defeating claims of bona fide creditors of the community as

in the case at bar, the evidence must be clear and convincing in support of such contention. Hargis v. Hargis, 157 Wash. 251, 288 P. 664; Id., 160 Wash. 594, 295 P. 742; In re Slocum's Estate, 83 Wash. 158, 145 P. 204. The status of property as community or separate is established at the time the property is acquired, and the test is whether it is acquired with community funds or community credit or with separate funds or separate credit. Walker v. Fowler, 155 Wash. 631, 285 P. 649; Hargis v. Hargis, 160 Wash. 594, 295 P. 742.

The $6,400 borrowed from the bank on the notes of the husband, the manager of the community, and the $6,400 obtained from the insurance company on the note and mortgage executed by appellant and her husband, were community funds under the law of Washington. Olympia Building & Loan Ass'n v. McCroskey, 172 Wash. 148, 19 P. (2d) 671; Walker v. Fowler, supra; In re Gulstine's Estate, supra. These community funds were used to purchase the property, and no separate funds were included in the payment at the time of purchase when the character of the property became established. Consequently, having been paid for with community funds, the property became community property. The fact that separate funds belonging to appellant were later used in paying off the notes and mortgage did not operate to change or alter the character of the property from community to separate. Katterhagen v. Meister, 75 Wash. 112, 134 P. 673; Walker v. Fowler, 155 Wash. 631, 285 P. 649. In Re Gulstine's Estate, supra, it was said:

"The title to real estate becomes fixed at the time the same vests, and remains either separate or community, unless changed in some manner recognized by law. [Citing cases.]"

It is claimed by appellant that $1,500 of the purchase price was paid from her sep-arate funds derived by her from her father's estate. That such an amount was so received by her is clear, but the referee and the court rejected the testimony that this money was used in the purchase of the real estate. There is evidence which justified the conclusion that the $1,500 was evidenced by a certificate of deposit which was not cashed until after the purchase of the land was completed. We cannot disturb the finding of the referee approved by the court; there being substantial evidence to support it. Monson v. Hibler (C. C. A.) 24 F.(2d) 909; Neece v. Durst (C. C. A.) 61 F.(2d) 591.

Appellant claims an equitable lien on the property to the extent that her separate funds were applied to the community obligations incurred at the time of purchase. Appellant is not entitled to such an equitable lien as against creditors under the law of the state of Washington as appears from the opinion of the Supreme Court of that state in Re Gulstine's Estate, supra, from which we quote:

"Over the dissent of the writer of this opinion, this court, in the case of Walker v. Fowler, supra, refused to allow one of the spouses credit by way of an equitable lien upon a tract of real estate for money, the separate property of such spouse, paid on account of a community obligation constituting a lien upon the land. In the case cited, it was held that the real property was owned by the community and the separate estate of the wife, in fixed proportions, as determined by the acts of the parties at the time of the acquisition of the title, but the court refused to allow the separate estate of the wife any further equitable right, although it clearly appeared that a certain specific amount was paid out of her separate funds on account of the community indebtedness evidenced by a community note secured by a community mortgage on the land."

Order affirmed.