[No. 27063.    Department Two.    June 28, 1938.]

EDNA SMITH, *Appellant*, v. C. R. HOUSE, *as Sheriff, et al.,*
*Respondents.*[1]

*E. C. Ward, Thurman E. Ward,* and *Snively & Bounds,*
for appellant.

*McEwen & Brooks,* for respondents.

BLAKE, J.—Plaintiff was married to Frederick George
Smith in 1925.   In April, 1932, the latter executed and
delivered to First National Bank of The Dalles his note
for $9,156.65.   The bank having failed, the receiver
brought suit on the note and obtained judgment against
Smith for $8,154.67.   The receiver caused execution to
issue on the judgment.   The sheriff levied on 192 head
of cattle, which plaintiff claims to be her separate prop-
erty.   She brought this action to enjoin sale under the
execution, and to establish her separate ownership of

[1]Reported in 80 P. (2d) 816.

the cattle. From judgment dismissing the action, plaintiff appeals.

■ That the judgment against Smith was a community indebtedness, is not disputed. Neither is it disputed that all of the cattle were acquired during coverture. Therefore, they are presumptively community property. While this is a rebuttable presumption, it may be overcome only by evidence which is satisfactory and convincing—at least where creditors of the community are concerned. *Hargis v. Hargis,* 160 Wash. 594, 295 Pac. 742; *Seaton v. Smith,* 186 Wash. 447, 58 P. (2d) 830.

It has been held that the uncontradicted testimony of the wife is sufficient to overcome the presumption. *Carlson v. Rea,* 94 Wash. 218, 161 Pac. 1195. The holding, however, carries the necessary implication that her testimony be unimpeached. And the court explicitly so indicated in *Flanagan v. Farrington,* 172 Wash. 184, 19 P. (2d) 660, in which it said:

"Since there was no contradiction of the testimony of respondent *and her testimony was not in any way impeached,* it was sufficient to overcome the presumption that the property involved was community property." (Italics ours.)

■ Now, it appears from the undisputed evidence in this case that in June, 1932, Smith gave a chattel mortgage upon community personal property (crops, farm equipment, horses, and cattle) of the approximate value of eighteen thousand dollars, to secure the above mentioned promissory note. When in July, 1933, the receiver brought suit on the note and to foreclose the chattel mortgage, it was found that all but a very small part of the property described in the chattel mortgage had been dissipated, without any accounting of the proceeds. The position of respondents is that appellant and her husband sold the property covered by the

chattel mortgage and converted the proceeds to their own use; that the cattle involved in the instant case were purchased with proceeds from the sale of the property covered by the chattel mortgage. While there is no direct proof that such is the fact, circumstantially it is convincingly established, to our minds. It will profit nothing, however, to review the evidence in detail. It will suffice to set out appellant's evidence in a general way, and advert to two or three specific items of evidence which, to our minds, discredit her entire case.

In presenting her cause in this court, appellant divides the cattle into seven groups, ownership of which she seeks to establish (1) by gift, and (2) by purchase with separate funds (a) from proceeds of property belonging to her prior to marriage and (b) money borrowed by her individually from her father. (In passing, we may remark that, with the exception of four heifers and their increase, all of the cattle involved in the instant case were acquired subsequent to 1933.) One group, called the "Mays cows," appellant claims to have purchased from her father. The transaction was consummated by giving her father a chattel mortgage for three thousand dollars, to secure two thousand dollars she claims to have previously borrowed, and one thousand dollars, the purchase price of the Mays cows. Her father claimed to have purchased the Mays cows in Oregon. He did pay for them, but we are not at all persuaded that he paid for them with his own money. On the contrary, we are convinced, from all the facts and circumstances surrounding the transactions of appellant and her husband, that he was acting merely as their agent. One thing that supports this conclusion is that the Mays cows were brought across the Columbia river on permits designating F. G. Smith as the owner.

There is another feature of the evidence which confirms our belief that, in these transactions, appellant's father was lending his assistance to her and her husband in their effort to escape community obligations. In 1923, F. G. Smith entered into a contract to purchase a large tract of land from his mother. February 26, 1934, his mother gave notice of cancellation of the contract. Smith, on behalf of himself and the community, filed petitions in bankruptcy March 17, 1934. On May 25, 1934, appellant's father filed for record a deed to himself from Smith's mother, conveying the land covered by the contract. This deed purported to have been executed March 3, 1931. In the meantime, Smith had, in 1932, leased the land to one Jakeshaw, had collected the rentals, and had included in the chattel mortgage to the bank the 1932 and 1933 crops, growing and to be grown on the property. Not until 1934 did appellant's father lay claim to the land or rentals. In 1936, he purported to lease this property to appellant. Yet appellant testified that she and her husband had been living on the place since 1935.

Among other property which appellant claimed as her separate property, as explaining where the money came from to purchase the cattle, were an International truck, and a store and filling station. Yet we find F. G. Smith making an application for a motor vehicle license, as registered owner of the truck, and giving a chattel mortgage on it. We find him ordering equipment for the filling station and applying, in his own name, for credit in connection with its operation. He also listed, as owner, the truck and filling station equipment for the purpose of taxation. In connection with the operation of the store, we find customers' checks, in payment of accounts, made to F. G. Smith. Sales slips used in keeping accounts bore the printed in-

scription: "Smithville Garage & Store. Fred Smith, Prop."

In 1935, F. G. Smith made two applications for live stock brands, showing that he owned 1,100 sheep, 150 cattle, and 30 horses. Yet appellant claims that her husband did not own anything during the period the cattle in controversy were acquired. She testified that she had even paid his living expenses since 1932.

Without reviewing the evidence further, we may say that, as we view it, appellant failed, under the rule indicated in *Flanagan v. Farrington, supra,* to establish separate ownership of the cattle upon which the sheriff levied execution.

Judgment affirmed.

STEINERT, C. J., BEALS, MILLARD, and ROBINSON, JJ., concur.